15-1384-cr
*United States of America v. Martinez*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2016

Submitted: January 27, 2017    Last Submission: September 19, 2019
Decided: March 16, 2021

Docket No. 15-1384-cr

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

JOSE ANTONIO MARTINEZ, AKA YOYO,

*Defendant-Appellant,*

B e f o r e:

CABRANES and LYNCH, *Circuit Judges.*[*]

---

[*] Judge Ralph K. Winter, originally a member of this panel, died on December 8, 2020. This appeal has been decided by the two remaining members of the panel, who are in agreement. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458-59 (2d Cir. 1998).

Jose Antonio Martinez appeals from a judgment of the United States District Court for the Eastern District of New York (Garaufis, *J.*) sentencing him to 20 years in prison on his plea of guilty to participating in the affairs of a criminal enterprise, specifically, the "MS-13" street gang, through a pattern of racketeering consisting of, among other crimes, murder and a separate count of discharging a firearm during a crime of violence. Martinez appealed, initially arguing only that his sentence was substantively unreasonable. While his appeal was pending, the United States Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015), holding that the "residual" clause of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. Then, in *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court reaffirmed its adherence to the categorical approach in the context of 18 U.S.C. § 924(c) and found the "residual" clause in § 924(c)(3)(B) unconstitutionally vague. In light of *Davis*, this Court then decided *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), vacating a conviction under § 924(c)(3)(B) for using a firearm in the course of a conspiracy to commit a Hobbs Act robbery. Relying on *Johnson*, *Davis*, and *Barrett*, Martinez now argues, for the first time on appeal, that neither of the charged racketeering offenses are violent crimes and that his firearm conviction is therefore legally invalid. Finding no plain error, and rejecting his additional contention that his sentence is substantively unreasonable, we AFFIRM the judgment of the district court.

---

Susan Corkery and Audrey Spektor, Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee.*

Bruce R. Bryan, Syracuse, New York, *for Defendant-Appellant.*

---

GERARD E. LYNCH, *Circuit Judge*:

On April 22, 2011, Jose Antonio Martinez, an associate of the violent La Mara Salvatrucha ("MS-13") gang, pled guilty in the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *J.*) to all counts of a three-count superseding information charging him with substantive and conspiracy violations of the Racketeer-Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and discharging a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A), pursuant to a plea agreement calling for his cooperation with the authorities in their investigations. The pattern of racketeering underlying the substantive RICO charge included: (1) the murder, in violation of New York State law, of John Halley; (2) conspiracy to murder members of a rival gang; and (3) conspiracy to distribute narcotics.

The government later concluded that, although Martinez had provided them with useful information, he had not been fully forthcoming in his cooperation, and declined to file a motion in support of a sentence below the recommendations of the Sentencing Guidelines and the applicable mandatory minimum sentence for the firearm offense. On April 15, 2015, he was sentenced to concurrent ten-year terms of imprisonment on the racketeering counts and a

3

mandatory consecutive ten-year term on the firearms charge. The charges and guilty plea were, at the time, sufficiently non-controversial that when Martinez appealed, he did not raise any objection to his conviction, challenging only the reasonableness of his sentence.

Just a few months after Martinez's sentence, however, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015), holding that the "residual" clause of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. In consequence, Martinez filed a supplementary brief contending that his conviction for violating § 924(c) should be reversed. Then, in *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court invalidated the "residual" clause in § 924(c)(3)(B) as unconstitutionally vague. At this Court's request, the parties filed supplementary briefs addressing the effect of *Davis* on Martinez's § 924(c) conviction.

The case requires us to revisit our precedent in *United States v. Ivezaj*, 568 F.3d 88 (2d Cir. 2009), which held that a RICO offense based on two violent racketeering predicates is a violent crime for the purposes of § 924(c). Because *Davis*'s effect on *Ivezaj*'s holding is unclear, we conclude that Martinez has failed to show plain error. We therefore AFFIRM Martinez's conviction and sentence.

4

## BACKGROUND

The criminal conduct for which Martinez was sentenced has never been in dispute. Martinez was associated with the MS-13 gang, which he knew to be an organization that commits criminal acts, including murders. After learning that his girlfriend had left him for a member of a rival gang, Los Vatos Locos, Martinez approached the leader of the Flushing, Queens, branch of MS-13 and sought his assistance in finding and killing the man his ex-girlfriend was now seeing. With the gang leader's blessing, Martinez and other MS-13 members traveled several times from Queens to Yonkers, searching for the man, or for other members of Los Vatos Locos, in order to kill them; on at least one of these occasions, Martinez himself carried a gun with the intention of killing the man himself.

On September 29, 2007, the last of these expeditions, Martinez drove while another gang member, Hector Aleman Lemos, carried the gun. Martinez was unable to find his rival, but he did spot a group of men standing on the street whom he believed to be members of the Vatos Locos. Martinez, Lemos, and the other MS-13 member in the vehicle decided to shoot at the group. Lemos got out of the van and walked towards the men with a .38 caliber revolver; Martinez then

5

heard several shots. Lemos ran back to the van and said he had hit someone. He got back in the van, and Martinez drove away. It was later learned that Lemos's shots had killed John Halley. There is no evidence that Halley was affiliated with Los Vatos Locos or with the man against whom Martinez held his grudge.

In July 2010, Martinez was indicted and charged with conspiracy to commit murder for the purpose of maintaining and advancing his position in a racketeering enterprise in violation of 18 U.S.C. § 1959(a)(5), and possessing a firearm during a crime of violence during which the firearm was brandished and discharged, in violation of 18 U.S.C. § 924(c)(1)(A). Pursuant to a plea agreement, Martinez eventually pled guilty to all counts of a superseding information that charged him with participating in the affairs of an enterprise, the MS-13 gang, through a pattern of racketeering, in violation of 18 U.S.C. § 1962(c); conspiring to do so, in violation of 18 U.S.C. § 1962(d); and using and carrying a firearm during a crime of violence during which the firearm was brandished and discharged, in violation of 18 U.S.C. § 924(c)(1)(A). The charged pattern of racketeering consisted of three racketeering acts: the murder of John Halley, a conspiracy to murder members of Los Vatos Locos, and a conspiracy to distribute cocaine.

The information charged that the firearm had been brandished and discharged during the substantive and conspiracy RICO violations. During his plea allocution, Martinez described the events of the night of September 29, 2007 as the conduct that made him guilty of the firearms offense. On April 10, 2015, he was sentenced in the United States District Court for the Eastern District of New York to concurrent ten-year terms of imprisonment on the racketeering counts, and a mandatory consecutive ten-year term on the firearms charge.

Martinez filed a timely notice of appeal on April 28, 2015. His initial argument on appeal was that his sentence of 240 months' imprisonment was substantively unreasonable, relying primarily on his attempted cooperation, personal circumstances, and the fact that he did not personally shoot Halley. At no time during the district court proceedings did Martinez, who was at all times represented by counsel, object to the legal sufficiency of the count in the superseding information charging a violation of 18 U.S.C. § 924(c). However, Martinez, through counsel, filed a supplemental brief in September 2016 arguing that *Johnson* called into question his conviction on that count. Then at the Court's request, the parties submitted supplemental briefing to address *Davis*'s relevance, if any, to this appeal. Martinez has now added a new argument on appeal: that

7

*Johnson*, *Davis*, and this Court's circuit precedent in *Ivezaj* and *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019) ("*Barrett II*") require the vacatur of his § 924(c) conviction. Because he argues that the change in the law affects the voluntariness of his plea, Martinez also asks this Court to vacate his RICO convictions, set aside his guilty plea, and remand the case to allow him to decide whether to negotiate a new guilty plea or go to trial. Lastly, Martinez adheres to his initial argument that his total sentence of 20 years' imprisonment was substantively unreasonable.

## DISCUSSION

Because Martinez raises the § 924(c) argument for the first time on appeal, he must establish that, in accepting his guilty plea, the district court committed plain error. Under plain error review, we consider "whether (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020), quoting *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013). Martinez's challenge to the reasonableness of his sentence, having been preserved in the district court, is reviewed for abuse of discretion. *United States v. Betts*, 886 F.3d 198, 201 (2d Cir. 2018).

8

We conclude that Martinez has not shown that the district court's acceptance of his guilty plea was plain error. To explain why, we must venture into the anything-but-plain evolution of the law underlying Martinez's claim. We also conclude that it was within the district court's discretion to sentence Martinez to a 20-year term of imprisonment for his crimes.

## I.  The Validity of Martinez's Conviction for Violating Section 924(c)

### A.  Section 924(c)

Insofar as is relevant to this case, § 924(c) provides an enhanced punishment for "any person who, during and in relation to any crime of violence . . ., uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A). The enhanced punishment requires a mandatory sentence of "not less than five years" in prison "in addition to the punishment provided for such crime of violence," *id*. § 924(c)(1)(A)(i), increased to seven years if the firearm is "brandished," *id*. § 924(c)(1)(A)(ii), and ten years if it is "discharged," *id*. § 924(c)(1)(A)(iii). A crime of violence is defined, for purposes of this enhancement, as a felony crime that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," *id*. § 924(c)(3)(A) (the "force" or "elements" clause), or "by its nature, involves a substantial risk that physical force against the person or

9

property of another may be used in the course of committing the offense," *id*. § 924(c)(3)(B) (the "residual" or "risk of force" clause).

It might surprise a reader unfamiliar with the history of the Supreme Court's interpretation of this statute to learn that there is any question as to whether participating in the affairs of a street gang dedicated to committing violent crimes through a pattern of criminal acts that included the murder of a person who was standing innocently on the street constitutes a "crime of violence" under either of these definitions, or for that matter under any common-sense understanding of the term "crime of violence." But two strands of the Supreme Court's case law regarding the statute combine to give Martinez a plausible argument that it does not.

The Court's opinion in *Johnson*, which prompted Martinez to raise the question in the first place, held that the so-called "residual" clause of the ACCA, which similarly enhances punishment for possession of a firearm by a convicted felon who had multiple prior convictions for "violent felon[ies]," defined as felonies that "involve[] conduct that presents a serious potential risk of physical injury to another"was unconstitutionally vague because the clause both fails to give fair notice to ordinary people of the conduct it covers and "invites arbitrary

10

enforcement by judges." 576 U.S. at 596-97 (internal quotation marks omitted).

The Supreme Court thus concluded that neither ordinary Americans nor legally-trained judges are capable of deciding whether a particular category of crime ordinarily involves a substantial risk of generating physical force.

After a period of confusion in the courts of appeals, including this one, *see United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018) ("*Barrett I*"), *vacated*, 139 S. Ct. 2774 (2019), about whether this holding applied not only (as in *Johnson* and the ACCA) to statutes that required courts to characterize crimes of which a defendant had been previously convicted, but also to cases (like this one involving § 924(c)) in which risk is assessed with respect to the offense charged in that very case, the Supreme Court, in a much closer vote, invalidated the residual clause applicable to Martinez under § 924(c)(3)(B). *Davis*, 139 S. Ct. at 2319.[1] Thus, Martinez's underlying offenses cannot be found to be crimes of violence under that branch of the definition.

But Martinez argues that this Court's substantive RICO jurisprudence, when considered alongside the Supreme Court's reasoning in *Johnson* and *Davis*,

---

[1] Only a single Justice dissented in *Johnson*; six joined Justice Scalia's opinion for the Court and two others concurred in the result. In *Davis*, Justice Gorsuch wrote for only five Justices, and four dissented.

also calls into question whether his convicted offense triggers § 924(c)'s force clause. The key problem here is that whether a crime itself involves the *actual* use of physical force against another person is to be decided not on the basis of what the particular defendant actually did – in this case, aiding and abetting shooting and killing John Halley, conduct that plainly involves the use of physical force against the victim – but whether the offense of conviction *necessarily*, by its statutory definition, "has as an *element*" such a use of force. 18 U.S.C. § 924(c)(3)(A) (emphasis added). That requirement is known as the "categorical approach."

## B. The Categorical Approach and the Modified Categorical Approach

The categorical approach has had its critics. *See United States v. Scott*, No. 18-163-CR, 2021 WL 786632, at *22 (2d Cir. Mar. 2, 2021) (en banc) (Park, J., concurring) (collecting cases). In enacting statutes like § 924(c) and the ACCA, Congress has chosen to override the normal sentencing discretion accorded to judges, who are authorized by statute to consider all sorts of information about both the present and past crimes of an offender, including the details of specific offenses, in weighing the seriousness of the offense of conviction and the character of the offender. *See* 18 U.S.C. § 3553(a). Instead, Congress requires

judges to impose a *mandatory* punishment based exclusively on the nature of the particular offense in connection with which a firearm is possessed, *id*. § 924(c)(1), or of the offenses of which the person who possesses it has previously been convicted, *id*. § 924(e)(1).

Tying significant, mandatory penalties to particular types of crimes is problematic in our federal system, because the definitions of most crimes vary, to a greater or lesser degree, from state to state, and between the states and the United States itself. If Congress chooses to attach such consequences only to particular federal offenses, it can do so simply by listing the covered offenses by their designation in the United States Code.[2] But to incorporate crimes without the use of such a list, including state crimes, Congress must resort either to listing "generic" labels of crimes (such as "murder" or "burglary") that might be defined differently in different jurisdictions, or provide a general description of the types of elements that would entail the consequences Congress wishes to include (as in the "force" and "risk of force" clauses in § 924(c)).

---

[2] *See, e.g.,* 18 U.S.C. §§ 1961(1)(B)-(G) (listing, by statute number or name, crimes that count as "racketeering activity" under RICO).

As a result, a crime is covered by the force clause of § 924(c)(3)(A) only if it *categorically*, that is to say, in every instance by its very definition, involves the use of force. *United States v. Hill*, 890 F.3d 51, 55-56 (2d Cir. 2018) (applying the categorical approach to § 924(c)(3)(A)). An example will make this clearer. Like many states, New York makes it a crime to "endanger[] the welfare of a child." N.Y. Penal L. § 260.10. One branch of that statute is very broadly worded: it is committed when a person "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." *Id.* § 260.10(1). A person who severely beats a child violates that statute, and clearly such an *instance* of endangering the welfare of a child would involve the application of force. But the statutory definition covers a multitude of sins: driving while intoxicated with a small child in the car, for example, would fall within the broad conduct defined as criminal by this provision, but would not involve the use of force against the child's person. The offense thus would not categorically come within the force clause.[3]

---

[3] *See United States v. Beardsley*, 691 F.3d 252, 254 (2d Cir. 2012) (discussing child endangerment in the context of a federal statute enhancing penalties for child pornography offenses based on a prior conviction for "abusive sexual conduct involving a minor or ward").

But now imagine that New York had defined the crime differently. Suppose the statute defined child endangerment as "(1) committing aggravated battery against a child less than seventeen years old *or* (2) otherwise knowingly acting in a manner likely to be injurious to such a child." And suppose that an indictment specifically charged a defendant with violating subsection (1) of that statute. Would we still say that the crime of conviction did not have as an element the use of force against a person?

The Supreme Court has sensibly held that we would not. In such a case, the statute is *divisible* – that is to say it "sets out one or more of [its] elements in the alternative." *Descamps v. United States*, 570 U.S. 254, 254 (2013). When facing such a statute, courts should apply what is called the *modified* categorical approach. *See, e.g., id.* at 278. Under the modified categorical approach, a court looks to the charging instrument or other authoritative documents to determine whether a defendant *necessarily* was charged with or convicted of a crime involving the use of force under the subsection. *Id.* at 272; *see also Gray v. United States*, 980 F.3d 264, 266 (2d Cir. 2020) (explaining that, under the modified categorical approach, a court may look to "a limited class of documents from the record . . . to determine what crime, with what elements, a defendant was

15

convicted of" (internal quotation marks omitted)). If so, the sentencing enhancement may be applied to the defendant.

## C. RICO and Section 924(c)

Martinez pled guilty to a charge that he violated § 924(c) by possessing a firearm during and in relation to two crimes, a substantive and a conspiracy violation of the RICO statute. In order to determine whether the § 924(c) sentence enhancement applies to Martinez, we must decide whether either of these crimes categorically involve the use of force. *Hill*, 890 F.3d at 55-56. We can assume that the conspiracy violation is *not* a crime of violence under the force clause because, as the Supreme Court's decision in *Davis* reasoned, a conspiracy offense cannot categorically involve the use of force, since its key element is simply an *agreement* to commit a crime. *Davis*, 139 S. Ct. at 2325; *see also Barrett II*, 937 F.3d at 127 ("*Davis* precludes us from concluding . . . that Barrett's . . . conspiracy crime qualifies as a § 924(c) crime of violence."). In other words, because no violent act (and under some conspiracy statutes no overt act at all) must be committed in order to be guilty of the offense, conspiracy offenses are not *categorically* violent crimes.

But what of the substantive RICO violation? Our Court has already addressed this question, albeit before the Supreme Court decided the cases on which Martinez primarily relies. In *United States v. Ivezaj*, 568 F.3d 88 (2d Cir. 2009), we applied the categorical approach to decide whether a substantive racketeering offense was a violent crime for purposes of § 924(c). Rejecting the defendants' argument that the elements of RICO violations should be considered in the abstract, such that the possibility that RICO crimes could be based entirely on a pattern of non-violent racketeering acts, we held that "[b]ecause racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, we look to the predicate offenses to determine whether a crime of violence is charged." *Id.* at 96. Accordingly, we concluded that RICO could be a crime of violence in a case such as *Ivezaj*, in which "[t]he underlying predicate acts, with one exception, allegedly involved the use of violent means." *Id.* (footnote omitted).

The *Ivezaj* panel formulated its holding as follows: "where the government proves (1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as 'crimes of violence' under § 924(c), a § 1962 conviction serves as a predicate for a conviction under § 924(c)." *Id.* (footnote omitted). In his

supplemental brief, Martinez argues that because two of the three predicates acts supporting his substantive RICO conviction were conspiracies and thus not crimes involving the use of force, and because under *Ivezaj* "[a] single racketeering act is insufficient to sustain" a § 924(c) conviction, the conviction should be reversed. Appellant's Letter Br. (Sept. 19, 2019) at 9-10.[4]

But Martinez's application of *Ivezaj* to the facts of this case is questionable. To the extent that *Ivezaj* purports to lay down a rule that a substantive RICO crime will be a crime of violence *only* where *at least two* predicate acts qualify as crimes of violence, such a pronouncement would be dictum, because *Ivezaj* did not present the Court with a case in which it had to decide whether a RICO pattern in which the jury found (or a defendant admitted) only one predicate that was a violent crime would be properly considered a crime of violence for

---

[4] Martinez does not question whether intentional murder under New York law is a violent crime, and neither do we. *See Scott*, 2021 WL 786632, at *2 (holding that first-degree manslaughter under New York law is a crime of violence under the force clause of the ACCA, and noting that "we reject [the defendant's] reasoning, which, carried to its logical – or illogical – conclusion, would preclude courts from recognizing even intentional murder as a categorically violent crime because, presumably, it is just as possible for a defendant to cause a person's death by omission when the defendant's specific intent is to kill, *see* N.Y. Penal Law § 125.25(1) (second-degree murder), as when his specific intent is to cause serious physical injury, *see id*. § 125.20(1) (first-degree manslaughter).")

purposes of § 924(c). But that means that whether a RICO charge that is based on one violent predicate and one or more non-violent predicates, such as we have here, is a crime of violence is an open issue in this Circuit.[5]

In fact, the reasoning of *Ivezaj* arguably supports a conclusion that a RICO offense predicated on a pattern of racketeering that included one crime of violence would be a crime of violence under § 924(c). As the government argues, the force clause defines "crime of violence" to mean "an offense that . . . has as *an element* the use . . . of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). It is not necessary that *every* element of the crime involve violence; only one element must do so. *See* Govt. Letter Br.

---

[5] The issue is further complicated by the fact that it is not clear whether the pattern charged in *Ivezaj* actually included two violent predicate crimes, as that concept is now understood. The opinion does not list in detail all of the racketeering acts charged in the indictment, but it appears that one or more of the charged predicate acts (in addition to the gambling charge that we acknowledged to be non-violent, *Ivezaj*, 568 F.3d at 96 & n.5), could have been found based on a *conspiracy*, which under the then-prevailing law of the Circuit, was considered a violent offense under the "residual" clause if the conspiracy's object was the commission of a violent crime, *see id*. at 94-95 (noting that "Racketeering Act Four" could have been found based on conspiracy to commit extortion), 95 (citing our caselaw finding conspiracies to commit violent crimes to be violent under the "risk-of-force" rationale), 96 n.4 (noting that we had found RICO *conspiracy* to be a crime of violence "under statutes that provide virtually identical definitions of that term to the definition provided in § 924(c)").

19

(Sept. 19, 2019) at 7-8. The basic reasoning of *Ivezaj* is that the unusual complex crime defined by RICO covers (like "endangering the welfare of a child") a multitude of sins, such that there is a difference between a RICO charge that rests on multiple acts of mail fraud and one that rests on multiple acts of murder, but that unlike "endangering the welfare of a child," a substantive RICO violation requires *as an element of the offense* that the jury find, or that a pleading defendant admit, the elements of particular, separately defined crimes that are incorporated by reference into the definition of the RICO violation created by § 1962(c).

*Ivezaj* thus suggests that the proper way to address substantive violations of RICO is to "look to the predicate offenses to determine whether a crime of violence is charged." *Ivezaj*, 568 F.3d at 96. But if that is so, a RICO pattern that consists of a murder and a narcotics conspiracy requires a finding of the use of force against another every bit as much as does a RICO pattern consisting of two murders. Accordingly, we disagree with Martinez's contention that *Ivezaj compels* the conclusion that a RICO offense may be a crime of violence only if any *two* of the charged predicate offenses are violent crimes. Whether a substantive RICO offense in which one of the predicate acts constituting the pattern of racketeering activity found by the jury or admitted by a defendant necessarily involved the

use of physical force as an element renders the entire offense a "crime of violence" triggering § 924(c)(1)(A) is an open question in this Circuit.

However we would read *Ivezaj* in isolation if it were the only relevant precedent, moreover, its continued authority is debatable. The Supreme Court precedents discussed above have certainly called into question, if not the premises directly underlying *Ivezaj*, many of the principles and precedents that formed the legal background against which the case was decided.

In arguing that substantive RICO violations can never be crimes of violence for purposes of § 924(c), Martinez cites those Supreme Court cases to contend that *Ivezaj* itself misapplied the categorical approach. Martinez emphasizes that, as acknowledged above, the elements of RICO are, like "endangering the welfare of a child," extremely broad. One violates 18 U.S.C. § 1962(c) by participating in the affairs of an "enterprise" – defined in § 1961(4) to encompass almost any form of organized human activity – through a "pattern of racketeering activity," defined in § 1961(5) to include two or more acts of "racketeering activity," defined in § 1961(1) to include many acts which do not

21

involve the use of force by any stretch of the imagination.[6] Thus, considered in the abstract, § 1962(c) arguably covers *both* forcible and non-forcible crimes.

On the other hand, if RICO is not as neatly divisible as the hypothetical child endangerment statute described above, which subdivides cleanly into specific subsections defining different conduct, neither does RICO neatly fit the pattern of the actual New York child endangerment statute, which uses very broad language to define an offense in terms of a conceptual category that could apply both to forcible and non-forcible conduct. In contrast to such a statute, RICO requires that the specific crimes that constitute the "pattern" be identified in the charging instrument, and that the specific elements of those crimes be alleged and proved beyond a reasonable doubt. In Martinez's case, the pattern charged included the offense of murder as defined in N.Y. Penal L. § 125.25(1) (intentionally causing the death of another person), and Martinez admitted to every element of that crime in pleading guilty to the charged pattern of racketeering.

---

[6] Racketeering activity includes crimes ranging from murder to gambling to forgery to the fraudulent use of a passport. *See* 18 U.S.C. § 1961(1).

That predicate act of racketeering, moreover, was essential not only to finding that Martinez was guilty of the offense charged, but also to determining the penalty to which Martinez was exposed. As Martinez was specifically advised during his guilty plea allocution and in the plea agreement that he signed, the maximum sentence for the substantive RICO count to which he pled guilty was life imprisonment. But RICO sets forth distinct penalties for different categories of substantive violations, and thus creates distinct offenses that must be proved beyond a reasonable doubt, depending on the nature of the racketeering activity charged. The maximum punishment for a violation of § 1962(c) is ordinarily 20 years' imprisonment, and becomes imprisonment for life only "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). Murder was the only racketeering act to which Martinez pled that carried such a penalty. *Compare* N.Y. Penal L. § 60.06, *with id*. § 105.15, *and* 21 §§ U.S.C. 841(a)(1), (b)(1)(C), 846. The murder predicate thus needed to be found beyond a reasonable doubt by a jury or admitted by Martinez in pleading guilty for the maximum punishment of life imprisonment to apply.

## D. Plain Error

Because Martinez raised no objection in the district court to the validity of the § 924(c) charge, we must decide this case under the plain error standard of review. That the case law on which he relies includes cases decided since the district court's judgment does not undermine his claim; whether there was "error," and whether that error is "plain" – the first two requirements of the plain error standard of review – "is established at the time of the appeal," not as of the time that the district court ruled. *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020), citing *Henderson v. United States*, 568 U.S. 266, 279 (2013).

RICO is a highly unusual statute that encompasses within its terms not only a wide variety of conduct but a wide variety of specifically defined criminal acts whose separate elements are defined by state and federal statutes incorporated by reference into RICO's defined elements. The Supreme Court has never addressed how the categorical or modified categorical approach applies to such a statute. Nor has this Court had occasion to address whether *Ivezaj*'s approach of determining the status of a substantive RICO offense by looking to the predicate acts that make up the charged pattern of racketeering activity remains good law under the Supreme Court's more recent explanations of the

24

categorical and modified categorical approaches. Thus, whether or not Martinez

is correct that *Ivezaj* does not permit a finding that the substantive RICO offense

charged in the information to which he pleaded guilty is categorically a crime of

violence, and/or that *Ivezaj* was wrongly decided based on current Supreme

Court case law, such a conclusion is by no means "clear or obvious," *Nouri*, 711

F.3d at 138 (internal quotation marks omitted), under the law as it stands today.

First, no directly applicable Supreme Court precedent addresses whether

the categorical approach is to be applied to substantive RICO violations (or, for

that matter, to any RICO violations). Certainly, the Court has not specifically

addressed whether (or under what circumstances or by what theory) substantive

RICO can be classified as a "crime of violence" as defined in the "force clause" of

§ 924(c).

Nor is there clear-cut *Circuit* authority on the precise question before us. As

we have seen, *Ivezaj* applied what it characterized as the categorical approach to

decide that RICO offenses are to be judged violent or not depending on the

underlying pattern of racketeering alleged in the particular case, and determined

that, at least where *two* violent predicate acts are found as part of the pattern, a

substantive RICO offense is a violent crime. *Ivezaj*, 568 F.3d at 96. It was not faced

with, and therefore had no need to decide, whether a RICO violation predicated on a pattern that included *one* violent crime should similarly be considered a violent crime. There is thus no binding authority on the point.

Second, whatever else may be said about the continuing meaning or authority of *Ivezaj*, its one clear message is that whether a substantive RICO offense is or is not a crime of violence is determined by the nature of the predicate offenses constituting the charged pattern of racketeering. *Id*. at 95-96. Whether that is a correct application of the *categorical* approach is certainly "subject to reasonable dispute," *Nouri*, 711 F.3d at 138 (internal quotation marks omitted), under recent Supreme Court precedent refining that approach.

But there is even less authority addressing whether the *Ivezaj* holding can be upheld as a correct application of the *modified* categorical offense, that is, whether substantive RICO is a divisible statute.[7] As discussed above, RICO is not

---

[7] We note that at least one other circuit has identified substantive RICO as a "divisible statute" and has applied the modified categorical approach. *See United States v. Williams*, 898 F.3d 323, 332-33 (3rd Cir. 2018), cert. denied, 139 S. Ct. 1351 (2019) (applying the modified categorical approach to determine whether a prior substantive RICO conviction was a qualifying controlled substance offense supporting a career offender designation under the Guidelines); *see also Haynes v. United States*, 936 F.3d 683, 687-92 (7th Cir. 2019) (applying the modified categorical approach to 18 U.S.C. § 1952(a)(2)(B)).

precisely analogous to statutes that have been found to be clearly divisible – but neither is it precisely analogous to statutes that have been found to be clearly unitary. RICO violations require the indictment to charge, the government to prove, and the jury to find beyond a reasonable doubt, the precise elements of particular federal or state offenses. A jury deciding a RICO case is not asked to apply a broad unitary statutory formulation (like "endangering the welfare of a child") to particular facts to decide whether the facts fit that formulation. That is the situation for which the categorical approach was devised: does an element that the jury is required to find in order to convict *necessarily* include the use of force, such that every finding of guilt under that statute has found the use of force? Or might the jury have found the defendant guilty on a theory that does not involve the use of force?

In the case of RICO, as is the case with statutes that have been held to be divisible, a jury is faced not with deciding whether the defendant engaged in a pattern of racketeering by applying a general conceptual definition, but is confined to deciding whether the defendant committed the particular subset of predicate crimes charged in the indictment. Every RICO case is thus arguably a crime of violence or not depending on which particular portions of the

segregable language of RICO's defining list of crimes that constitute

"racketeering activity" are charged in the case.

In effect, *Ivezaj*, while purporting to apply the categorical approach, actually applied a version of the *modified* categorical approach, dividing the statute into separate parts: a murder-and-robbery RICO case is different from a mail fraud RICO case. *See Ivezaj*, 568 F.3d at 96 ("[W]e look to the predicate offenses to determine whether a crime of violence is charged."). The latter would not be a violent crime, even if the particular conduct proved in a specific case included some violent acts, because the elements that the jury would be required to find do not include the use of force. But in a substantive RICO case in which the jury was required to find, or the defendant to admit, a predicate act that by its nature and elements requires the use of force, the RICO offense would be, under the logic of *Ivezaj*, a violent crime. *Id*.

Which of these analyses is correct is a complex and vexing question, like many that the Supreme Court has created with its complex and vexing jurisprudence with respect to sentencing statutes like § 924(c). But in light of the governing standard of review, we do not need to decide that question here. To resolve Martinez's appeal, we need only decide whether the district court plainly

erred by accepting his guilty plea to a violation of § 924(c) predicated on an admitted pattern of racketeering that includes a predicate act that is a violent crime. We cannot say that it did.

**II. The Substantive Reasonableness of the Sentence**

Martinez also challenges the substantive reasonableness of his 20-year sentence. That issue is far less complicated, and may be dealt with briefly. We address a challenge to the substantive reasonableness of a sentence based on "the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). The standard thus "amounts to review for abuse of discretion." *Id*. at 187. We will reverse only when "the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

Here, Martinez pled guilty to having participated in a murder – one that, although he was not the triggerman, was the direct result of his own instigation of an intended murder of a romantic rival – as part of a pattern of criminal acts committed in the course of his involvement in a violent criminal street gang.

29

Because the pattern included a murder, punishable under New York state law by a maximum of life imprisonment, the RICO offense is similarly punishable by a maximum of life imprisonment. The sentencing guidelines calculated by the district court recommended a sentence between 292 and 365 months of imprisonment. The offense was undoubtedly of the highest seriousness, as the district court recognized.

Martinez argues that the sentence was unreasonable because the district court did not adequately account for his effort to cooperate with the authorities or his personal characteristics. But the district court specifically considered those factors, and credited them, while duly noting that Martinez had not been fully forthcoming in his cooperation. The sentence that was imposed was hardly excessive for such a crime, and indeed was in line with defense counsel's request.[8] Arguments for and against higher or lower sentences can easily be constructed, but we cannot say that the sentence imposed was outside of "the range of permissible decisions" available to the district court.

---

[8] The defense sought a sentence of "not greater than 20 years," Appx. 169, noting that "20 makes sense in my mind . . . drawn from my experience . . . in my other cases involving similar types of circumstances involving homicide and racketeering," Appx. 172. The government sought a sentence of "not less than 20 years." *Id.* at 173.

*Cavera*, 550 F.3d at 189 (internal quotation marks omitted).[9]

---

[9] It is worth noting that, while the sentence imposed was formally two ten-year sentences, to run concurrently, on the racketeering counts, and a ten-year consecutive sentence on the firearms count, the mandatory consecutive nature of the sentence under § 924(c) appears to have played no substantive role whatsoever in the sentence imposed. Both the government and defense expressed their sentencing recommendations in terms of a unitary total sentence; the discussion of the seriousness of the offense rightly revolved entirely around the "senseless" killing of Halley, Appx. 168, and Martinez's role in it and remorse over it; and the district court clearly had the power under the law to impose a lower sentence on the racketeering charge if it believed that a total sentence of less than twenty years was appropriate based on the nature of the crimes charged and Martinez's personal characteristics, *see Dean v. United States*, 137 S. Ct. 1170, 1176-77 (2017) ("Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) . . . to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count.").

The sentence that was imposed was undoubtedly what the district court thought was appropriate, and the division of the time between the racketeering and firearms charges was a matter of legal form. These facts reinforce our conclusion that the acceptance of the plea to the firearms charge was not plain error. Even where the other requirements for a finding of plain error are present, the Supreme Court has reminded us that courts should not exercise their discretion to notice even a plain error unless that "error affected the defendant's substantial rights." *Henderson*, 568 U.S. at 276 (internal quotation marks omitted). To meet that standard "[i]n a case . . . in which the outcome was a conviction based on a plea of guilty, the appellant must show that there is a reasonable probability that, but for the error, he would not have pleaded guilty." *Dussard*, 967 F.3d at 156. Martinez can not meet that standard here, where the charges in the superseding information were settled upon as part of a negotiated disposition of the case, the defendant agreed to plead guilty in the hope of obtaining leniency by cooperating with the authorities, and the ultimate sentence was based on the seriousness of the underlying murder charge, and would certainly be reimposed if the case were remanded for resentencing solely on the RICO counts.

**CONCLUSION**

Accordingly, the judgment of the district court is AFFIRMED.