15-3012-cr (L)
*United States v. Taylor, Mizell*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

   At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of August, two thousand twenty-one.

PRESENT:
     RICHARD C. WESLEY,
     JOSEPH F. BIANCO,
      *Circuit Judges*,
     LAURA TAYLOR SWAIN,
      *District Judge.*[*]

_____

United States of America,

    *Appellee*,

   v.              Nos. 15-3012-cr, 15-3144-cr

Tayvon Kilpatrick, AKA Sealed Defendant 23, AKA Trayvon Wilson, Tevin Mizell, AKA Sealed Defendant 1, AKA Tev Gunz, Edwin Smith, AKA Sealed Defendant 3, AKA Ed Black, Joshua Fladger, AKA Sealed Defendant 4, AKA Millz, Richard Shackleford, AKA Sealed Defendant 5, AKA Sha, Ronathan Fladger, AKA Sealed Defendant 7, AKA Jeezy, Noel Bido, AKA Sealed Defendant 8, AKA Bigga, Mr. Joseph Otero, AKA Sealed Defendant 10, AKA Triple-H, Hennison Curry, AKA Sealed Defendant 9, AKA Henny,

_____

[*]  Chief Judge Laura Taylor Swain, United States District Court for the Southern District of New York, sitting by designation.

Shawn Arnold McFadden, AKA Sealed Defendant 11, AKA Weezy, Nicholas Rosario, AKA Sealed Defendant 24, AKA Nico Gunz, Dequan Brown, AKA Sealed Defendant 12, AKA Dada, Tyre Davis, AKA Sealed Defendant 13, AKA Tye, Edward Binyard, AKA Sealed Defendant 22, AKA E, AKA E-Wreck, Kaymar Francis, AKA Sealed Defendant 14, AKA Kayo, Joseph Huntley, AKA Sealed Defendant 15, AKA Goonie, Odanis Ozuna, AKA Sealed Defendant 16, AKA Jose Ozoria, AKA O, Robert Wannamaker, AKA Sealed Defendant 21, James Anderson, AKA Sealed Defendant 17, Mark Grayson, AKA Sealed Defendant 18, AKA Biscuit, Michael James, AKA Sealed Defendant 19, Malik McCollum, AKA Sealed Defendant 20, AKA Dot,

*Defendants*,

Amar Taylor, AKA Sealed Defendant 6, AKA Capo MMG, Kevin Mizell, AKA Sealed Defendant 2, AKA Kev Gunz,

*Defendants-Appellants*.

---

FOR APPELLEE:
MICHAEL GERBER, Assistant United States Attorney (Margaret Garnett, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT TAYLOR:
RANDOLPH Z. VOLKELL, Randolph Z. Volkell, Attorney at Law, Merrick, NY.

FOR DEFENDANT-APPELLANT MIZELL:
JOHN A. CIRANDO, D.J. & J.A. Cirando, PLLC, Syracuse, NY.

Appeal from the judgments of the United States District Court for the Southern District of New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Amar Taylor and Kevin Mizell (collectively, "defendants") each pled guilty to, and were convicted of, one count of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c), and one count of racketeering ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d). On appeal, both defendants challenge their § 924(c) convictions, arguing that § 924(c)'s residual clause is unconstitutionally vague in light of *Johnson v. United States*, 576 U.S. 591 (2015), and that RICO conspiracy does not constitute a crime of violence under § 924(c)'s elements clause.[1] Both defendants also appeal from their respective sentences: Taylor from his sentence of 150 months' imprisonment and Mizell from his sentence of 120 months' imprisonment.

We assume the parties' familiarity with the underlying facts and procedural history of this case, which we reference only as necessary to explain our decision to affirm.

## I. Defendants' § 924(c) Convictions

Defendants challenge their § 924(c) convictions on appeal. Specifically, they argue that, in light of *Johnson*, *Martinez*, and *Davis*, RICO conspiracy is not a crime of violence and,

---

[1] Due to the considerable amount of time that passed since the initiation of this appeal, we asked the parties to address the impact of two recent cases—*United States v. Davis*, 139 S. Ct. 2319 (2019) and *United States v. Martinez*, 991 F.3d 347 (2d Cir. 2021)—on defendants' § 924(c) convictions. Defendants, as well as the government, responded by submitting letter briefs. *See* Fed. R. App. P. 28(j). In those letter briefs, defendants rely on the Supreme Court's holding in *Davis* and our holding in *Martinez* to attack their § 924(c) convictions.

therefore, their RICO conspiracy convictions cannot serve as the predicate offense for their § 924(c) convictions.[2]

Because defendants raise their § 924(c) argument for the first time on appeal, they must establish that the district court committed plain error by accepting their guilty pleas. *See, e.g.*, *United States v. Martinez*, 991 F.3d 347, 351 (2d Cir. 2021). To demonstrate plain error, they must show that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Brown*, 843 F.3d 74, 81 (2d Cir. 2016) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). An error is "plain" if the error is established at the time of the appeal. *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020) (citing *Henderson v. United States*, 568 U.S. 266, 279 (2013), *cert. denied*, No. 20-6743, 2021 WL 1951883 (U.S. May 17, 2021).

As the government correctly concedes, the first two parts of the plain-error analysis are satisfied here because, in light of *Davis* and *Martinez*, it was a clear and obvious error for each defendant to be convicted of the § 924(c) charge with the RICO conspiracy as the predicate crime

---

[2] Mizell raised this challenge in his original brief to us, but then abandoned the argument in his reply brief; he abandoned that argument, however, based on our decision in *United States v. Hill*, 832 F.3d 135 (2016) ("*Hill I*"), which was later superseded by *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018) ("*Hill II*"). Taylor, on the other hand, did not raise a challenge to his § 924(c) conviction in his opening brief— instead, he argued that his sentence was substantively unreasonable—but he did indicate in his *pro se* reply brief that he was "join[ing]" Mizell's challenge to the § 924(c) conviction. In their most recent letter briefs, both defendants clearly challenge the validity of their § 924(c) convictions. Given the evolving nature of this area of the law, we construe defendants' papers to sufficiently raise a challenge to their § 924(c) convictions.

of violence.[3]  *See Martinez*, 991 F.3d at 354 ("We can assume that the [RICO] conspiracy violation is *not* a crime of violence under the force clause because, as the Supreme Court's decision in *Davis* reasoned, a conspiracy offense cannot categorically involve the use of force, since its key element is simply an *agreement* to commit a crime. . . .  In other words, because no violent act (and under some conspiracy statutes no overt act at all) must be committed in order to be guilty of the offense, conspiracy offenses are not *categorically* violent crimes.").

We therefore turn to the third prong of the plain error analysis to consider whether the defendants' § 924(c) convictions affected their substantial rights.  *See Brown*, 843 F.3d at 81. "An error affects the defendant's substantial rights when it is prejudicial—that is, when there is a 'reasonable probability' that the error affected the outcome of the proceeding."  *Dussard*, 967 F.3d at 156 (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–82 (2004)).  Where, as here, the error is a "conviction based on a plea of guilty, the appellant must show that there is a reasonable probability that, but for the error, he would not have pleaded guilty."  *Dussard*, 967 F.3d at 156.  In undergoing this review, we consider the record as a whole.  *Id.*

In *Dussard*—a case very similar to the one now before us—the defendant pled guilty to "using and carrying a firearm during and in relation to a crime of violence" in violation of § 924(c).[4]  *Id.* at 152–53.  There, the original predicate offense underlying Dussard's § 924(c)

---

[3]   We note that this case does not involve a racketeering conspiracy based on predicate acts resulting in an enhanced maximum penalty pursuant to 18 U.S.C. § 1963(a), sometimes referred to as an "aggravated racketeering conspiracy," and thus do not address the separate question of whether such a conspiracy could qualify as an elements-clause "crime of violence" under 18 U.S.C. § 924(c)(3)(A).

[4]   Section 924(c) applies to any person who "uses or carries a firearm" "in relation to any crime of violence *or* drug trafficking crime."  18 U.S.C. § 924(c)(1)(A) (emphasis added).

conviction was conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951.[5] *Id.*

Because of our decision in *United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019)—holding

that the Supreme Court's *Davis* opinion precludes us from concluding a Hobbs Act robbery

conspiracy qualifies as a § 924(c) crime of violence—the government in *Dussard* conceded that

the district court had erred by accepting the defendant's guilty plea on the § 924(c) charge where

the § 924(c) charge was predicated on a Hobbs Act conspiracy. *Dussard*, 967 F.3d at 156.

Thus, in *Dussard*, we were tasked with determining whether the defendant "met his burden of

showing that his plea of guilty on Count Three adversely affected his substantial rights, given the

record as a whole." *Id.* Because "the applicability of § 924(c)[] does not require the defendant

to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient

proof that the predicate crime was, in fact, committed," we considered whether there was sufficient

record evidence to support the narcotics conspiracy charged in Count Two (to which Dussard did

*not* plead guilty) and whether Dussard would have agreed to plead guilty to the § 924(c) charge

with the narcotics conspiracy as the predicate crime (rather than the RICO conspiracy). *Id.* at

157–58. In doing so, we considered several "aspects of the record," including: the indictment,

the plea agreement, defendant's statements made during the plea hearing, the Presentence Report

("PSR"), whether the defendant objected to facts within the PSR, the willingness of the defendant

---

[5] The judgment entered in *Dussard* stated that the defendant was guilty of a Hobbs Act conspiracy (Count One), but erroneously listed "narcotics conspiracy" as the predicate for the § 924(c) conviction (Count Three). *Dussard*, 967 F.3d at 154. Although Dussard was indicted on a narcotics conspiracy charge, in violation of 21 U.S.C. § 821 (Count 2), he did not plead guilty to, and thus was not convicted of, that count. *Id.* at 152–53. Additionally, from Dussard's plea agreement and plea hearing, it was clear that the predicate offense for the § 924(c) charge was the Hobbs Act robbery conspiracy, not the narcotics conspiracy. *Id.* at 154–156 (referring to the narcotics predicate offense listed in the judgment as "erroneous[]" and assuming that the district court convicted Dussard of carrying and using a firearm in relation to a crime of violence, to wit, the Hobbs Act robbery in Count 1).

6

to enter into a plea agreement, and whether in agreeing to the plea deal the defendant secured a favorable disposition. *Id.* In reviewing the record as a whole, and in particular the factors listed above, we concluded that there was sufficient record evidence to support Dussard's § 924(c) conviction predicated on the narcotics conspiracy and that there was no indication that Dussard would have declined to plead guilty to the § 924(c) charge based upon the drug trafficking crime, especially in light of the highly favorable nature of the plea agreement. *Id.* at 158–60; *see also* 18 U.S.C. § 924(c)(1)(A). More specifically, we explained:

> Plainly, Dussard was motivated—and the government was willing—to enter into a plea agreement that would allow him to plead guilty to a § 924(c)(1)(A)(i) offense, with its mandatory minimum consecutive five-year prison term, plus an offense that had no mandatory minimum prison term. Had he and the government anticipated the decision in *Davis*, this could easily have been accomplished—with no difference in the offense of conviction or in the punishment—by simply having the two lines of the Agreement describing Dussard's Count Three agreed-upon plea refer not to a crime of violence but refer instead to the drug trafficking crime that was also alleged as a § 924(c)(1)(A)(i) predicate in Count Three.
>
> Dussard has pointed to nothing in the record to indicate that he would not have agreed to that language.

*Id.* at 158.

Here, utilizing the same framework articulated in *Dussard*, we consider the validity of the defendants' § 924(c) convictions. Both defendants pled guilty to Counts One and Three of the superseding indictment. Count One charged defendants with participating in a RICO conspiracy in violation of 18 U.S.C. § 1962(d), in connection with the criminal activities of the Murda Moore Gangstas gang ("MMG") operating in the vicinity of the Moore Houses in the Bronx. Count Three charged defendants with using and carrying firearms, and discharging some of them, in connection with the RICO conspiracy charged in Count One and the narcotics conspiracy charged

7

in Count Two, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. As charged, Count Three carried a ten-year mandatory minimum sentence. *See* 18 U.S.C. § 924(c)(1)(A)(iii). However, both defendants pled guilty to possessing (but not discharging) a firearm in furtherance of the racketeering conspiracy, which resulted in the lesser five-year mandatory minimum sentence. *See* 18 U.S.C. § 924(c)(1)(A)(i). As set forth below, we conclude that the § 924(c) conviction for each defendant survives plain error review.

### A. Taylor

First, with respect to Taylor, there is more than sufficient evidence to support his guilt on the predicate narcotics conspiracy, and he has failed to demonstrate that he would not have pled guilty to the § 924(c) charge under the plea agreement if the government had required him to allocute to the predicate narcotics conspiracy rather than the RICO conspiracy.

In reaching this conclusion, we look to the record as a whole, including, *inter alia*, the superseding indictment, the plea agreement, the PSR, and Taylor's plea allocution. *Dussard*, 967 F.3d at 156–57. As noted above, the § 924(c) charge contained in Count Three was based on Taylor's use and carrying of a firearm "in relation to a crime of violence and a drug trafficking crime, . . . namely, the racketeering conspiracy charged in Count One of this Indictment *and* the narcotics conspiracy charged in Count Two of this Indictment." Taylor App'x at 19 (emphasis added). The narcotics conspiracy in Count Two was based on Taylor allegedly selling marijuana to an undercover police officer, and more generally on his alleged role in conspiring to distribute controlled substances in violation of the federal narcotics laws. Moreover, although Taylor did not plead guilty to Count Two, the RICO conspiracy charged in Count One was premised in part on the gang's drug dealing, its use of firearms in pursuit of its drug dealing activities, and its

8

robberies of rival drug dealers. In fact, in Taylor's plea agreement, the parties stipulated that Taylor's prior conviction for the sale of marijuana was relevant conduct for Count One.

Not only was the drug trafficking activity charged in Count Two factually intertwined with the RICO conspiracy as to which Taylor pled guilty in Count One, he also allocuted to that drug trafficking in connection with Count One. More specifically, during his plea allocution, Taylor admitted that he was a "member of MMG, a gang in the Bronx that engaged in drug dealing and violence," that "he agreed with other members of MMG to engage in these activities," and that he "shot at rival gang members." *Id.* at 82–83. At the same plea hearing, the government stated that, had the case gone to trial, it would have established that the gang engaged in a variety of criminal activities, including violence and drug dealing, and that these criminal acts were the basis for the RICO conspiracy charge (Count One). In addition, Taylor's PSR describes how the RICO conspiracy was based on a wide range of criminal activities, including, *inter alia*, drug dealing and violent acts to protect and expand the gang's narcotics enterprise. Taylor did not object to any factual findings in the final PSR. Thus, there is more than sufficient evidence in the record for us to be satisfied that Taylor's § 924(c) conviction could just have easily been predicated on the charged drug trafficking crime in lieu of a crime of violence.

Further, the record supports a conclusion that Taylor would not have declined an offer to plead guilty if he were required to plead to the drug trafficking predicate for the § 924(c) charge, rather than the crime of violence predicate. Taylor secured a favorable plea agreement with the government, which allowed him to plead guilty to only Counts One and Three. Moreover, in connection with Count Three, although charged with *discharging* the gun in violation of § 924(c)(1)(A)(iii), Taylor was not required to plead to a violation of that subsection. Instead, he

9

pled guilty to possessing the firearm in violation of § 924(c)(1)(A)(i).   At Taylor's sentencing, the district court explained that, under the plea agreement, Taylor was thus only facing a mandatory minimum sentence of five years on Count Three, as opposed to a ten-year mandatory minimum had he not pled guilty and been convicted at trial of discharging the firearm as alleged.   The district court further explained that the government could have brought multiple § 924(c) charges based on Taylor's violent conduct in the gang, resulting in a mandatory minimum of 30 or even 55 years' imprisonment.   Given that Taylor allocuted to drug trafficking in connection with Count One under the plea agreement and the stipulated facts in the PSR, Taylor has failed to articulate why he would have declined the same plea agreement if he were required to plead guilty on Count Three to using a firearm in furtherance of a narcotics conspiracy (rather than in furtherance of the factually-intertwined RICO conspiracy).

Accordingly, we conclude that, although RICO conspiracy is no longer a valid predicate for his § 924(c) conviction after *Davis* and *Martinez*, the record as a whole indicates that there is no "reasonable probability that the error affected the outcome of the proceeding," and thus the error did not affect Taylor's substantial rights.   *Dussard*, 967 F.3d at 156 (internal quotation marks omitted).   Moreover, we cannot say that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."[6]   *Brown*, 843 F.3d at 81.

---

[6]   We also find that the other challenges to the § 924(c) conviction raised in Taylor's *pro se* brief are without merit.   Contrary to Taylor's contentions, there is no defect based on vagueness arising from the fact that the maximum penalty for violations of 18 U.S.C. § 924(c) is not explicitly stated in the text of the statute.   The maximum penalty is implicit in the statutory scheme.   *See United States v. Johnson*, 507 F.3d 793, 798–99 (2d Cir. 2007) (holding that the maximum is life and noting the uncontroverted nationwide consensus on this point).   Moreover, Taylor's sentence on Count Three did not violate the rule set forth in *Alleyne v. United States*, 570 U.S. 99 (2013)—that a fact increasing a statutory mandatory minimum sentence must be found beyond reasonable doubt by a jury.   It is clear from the record that the district court did not impose a ten-year sentence because of a belief that it was required by statute to do so

10

**B. Mizell**

Mizell's challenge to his § 924(c) conviction fails for similar reasons. Like Taylor, Mizell was charged with, and pled guilty to, Counts One (RICO conspiracy) and Three (violation of § 924(c)) of the superseding indictment. Mizell, however, was not charged in Count Two (narcotics conspiracy). Notwithstanding this distinction in the charges brought against the defendants, we find no basis to conclude that there was any likelihood that Mizell would have declined to allocute to drug trafficking activity as the predicate for Count Three if he had been required to do so by the government as part of his plea agreement. First, like Taylor, Mizell was charged with, and admitted to, all of the underlying criminal conduct that formed the basis for his RICO conviction, including drug trafficking. Specifically, in his allocution, Mizell stated that he was a member of MMG, participated in the gang's criminal activities—including shootings and drug dealing—and knew about other MMG members' violence and drug dealing. Additionally, Mizell's PSR explained that: (i) Mizell was a leader of the MMG gang, (ii) the gang engaged in the distribution of narcotics, (iii) the gang relied on violence to promote and protect its enterprise, and (iv) Mizell himself participated in several violent acts. Mizell did not object to the PSR at sentencing. One such violent act was an armed robbery in 2011 of a rival drug dealer, in which Mizell and other gang members robbed an individual of marijuana and drug proceeds. As part of the plea agreement and calculation of the Guidelines range for Count One, Mizell stipulated to his involvement in the 2011 robbery. Based upon his allocution and the facts in the PSR, Mizell

---

under 18 U.S.C. § 924(c)(1)(A)(iii). Instead, the district court fully understood that the applicable mandatory minimum under 18 U.S.C. § 924(c)(1)(A)(i) was five years, and acted within its permissible discretion when it chose to sentence Taylor to ten years' imprisonment based on his guilty plea to Section 924(c)(1)(A)(i).

11

effectively stipulated to possession of a firearm in furtherance of a drug trafficking crime that could have provided the basis for his § 924(c) conviction. As noted *supra*, in *Dussard*, we made clear that "the applicability of § 924(c)[] does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." 987 F.3d at 157.

Moreover, as with Taylor, Mizell's decision to plead guilty to Counts One and Three resulted in a very favorable disposition. Specifically, the district court noted that Mizell had been facing a ten-year mandatory minimum sentence if convicted at trial of discharging the firearm as alleged in the superseding indictment, rather than the five-year mandatory minimum that resulted from the plea agreement (because he was not required to plead guilty to *discharging* the firearm). The district court also observed that Mizell (based upon his conduct in the gang) could have faced charges carrying a mandatory minimum sentence of 50, or even 75 years' imprisonment. In sum, there is sufficient record evidence to establish that: (1) Mizell used a firearm in furtherance of a narcotics conspiracy; (2) the government could have easily required Mizell as part of his plea agreement to plead guilty to the predicate offense of narcotics conspiracy for the § 924(c) charge in Count Three (rather than the RICO conspiracy); and (3) there is a high likelihood that Mizell would still have decided to plead guilty to obtain the favorable disposition in the plea agreement. Therefore, we are persuaded that the district court's error in accepting Mizell's guilty plea on the § 924(c) charge with the RICO conspiracy as a predicate crime of violence did not affect Mizell's substantial rights, and further, that it did not seriously affect "the fairness, integrity or public reputation of judicial proceedings." *Brown*, 843 F.3d at 81.

## II. Taylor's Sentence

Taylor separately challenges his above-guidelines 150-month sentence as substantively unreasonable, arguing that it presents an unwarranted disparity from other members of the conspiracy and from the national norm. "[O]ur review of a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). "[O]nly those sentences that are so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing them to stand would 'damage the administration of justice'" are substantively unreasonable. *Id.* (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)).

Section 3553(a)(6) counsels against "*unwarranted* sentence disparities," 18 U.S.C. § 3553(a)(6) (emphasis added), and there is nothing about Taylor's 150-month sentence as compared to his co-defendant or similar defendants nationally that renders that sentence substantively unreasonable. Here, the district court stated on the record the compelling reason why it imposed an above-guidelines sentence—Taylor's bullet permanently paralyzed the victim it struck. In particular, the district court explained: "I don't think there is anybody in this conspiracy who fired a weapon that left another person paralyzed. I think that is what really drives this. There have to be consequences to the conduct, and I think anything less would be to do a disservice and disrespect the victim here." Taylor App'x at 165. Although Taylor suggests that his culpability was not greater than co-defendants who shot at individuals but happened to miss, we conclude that it was not unreasonable for the district court to view the defendant who actually caused severe harm to the victim as more culpable than others who engaged in unsuccessful attempts to cause similar harm. We likewise reject Taylor's argument that his 150-

13

month sentence is substantively unreasonable because Mizell received a 120-month sentence but was the leader of the gang and supplied the gun Taylor used to carry out the shooting. Moreover, Taylor's comparison to national statistics involving lower sentences for other defendants convicted of *possessing* a firearm in violation of § 924(c) does not take into account the fact that, although he did not plead guilty to discharging the firearm under § 924(c)(1)(A)(iii)—which would have carried a 10-year mandatory minimum—he did not dispute at his plea or sentencing that the shooting to which he pled guilty did involve the discharge of the firearm. Thus, it was not unreasonable for the district court to view Taylor's conduct as comparable to defendants who are convicted of discharging a firearm and face 10-years' imprisonment for their conduct. In light of Taylor's gang-related shooting, unique among his co-defendants in the harm caused and qualitatively different from most defendants nationally convicted of possessing a firearm under § 924(c)(1)(A)(i), we cannot conclude that the district court's imposition of the 150-month sentence was substantively unreasonable. The sentence is certainly not so "shockingly high . . . that allowing [it] to stand would damage the administration of justice," *Broxmeyer*, 699 F.3d at 289, and thus Taylor's substantive challenge to the sentence fails.[7]

---

[7] We also find unpersuasive the procedural challenge regarding the Guidelines calculation raised by Taylor in his *pro se* brief—namely, that the district court erred in failing to consider a two-level downward departure on the basis of his guilty plea being part of a global disposition of the case. As a threshold matter, no such downward departure was referenced in Taylor's plea agreement, nor did Taylor request such a departure at sentencing. We conclude that the district court did not plainly err in failing to consider this unarticulated ground for a downward departure.

14

### III. Mizell's Sentence

Mizell separately challenges the procedural propriety of his 120-month sentence, claiming that the district court incorrectly calculated the applicable guidelines range.[8] Mizell did not raise this issue below, and concedes that our review here is for plain error. *See Brown*, 843 F.3d at 81.

The parties agreed that there were errors in the Guidelines calculation included in the original plea agreement. But these errors were noted, brought to the attention of the district court, and corrected by the parties prior to sentencing. The corrected calculation yielded the same guidelines range as the original calculation, and Mizell was sentenced accordingly. Under these circumstances, we are satisfied that the outcome of Mizell's sentencing was not impacted by any purported Guidelines miscalculation, and that his "substantial rights" were unaffected. *Id.* Simply put, there was no error, much less plain error.

<p style="text-align:center">*   *   *</p>

We have considered all of the defendants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

<div style="margin-left:40%">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>

---

[8] Because Mizell's argument fails on the merits, we need not consider the government's argument that he waived the argument.

15