USA v. Dussard

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2019

(Argued: May 14, 2020                    Decided: July 23, 2020)

Docket No. 18-804

_____

UNITED STATES OF AMERICA,

*Appellee*,

- v. -

NEIL DUSSARD,

*Defendant-Appellant*,

LOUIS KNIGHT, DAVID PIERRE, RICARDY LOUISSANT, KAREEM ABDUL MATHIS,

*Defendants*.

_____

Before:   KEARSE, JACOBS, and CABRANES, *Circuit Judges*.

Appeal from a 2018 judgment entered in the United States District Court for the Southern District of New York after a plea of guilty before George B. Daniels, *Judge*, convicting defendant of "[c]onspiracy to commit Hobbs Act robbery," in violation of 18 U.S.C. § 1951 (Count One), and "[p]ossession of firearm in furtherance of narcotics conspiracy," in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three), and sentencing him principally to imprisonment of 24 months on the robbery conspiracy count, to be followed by 60 months on the firearm count. On appeal, defendant, who did not raise any claims of error in the district court, contends that on Count Three, in accordance with his plea agreement, he in fact pleaded guilty to possession of a firearm only in furtherance of a crime of violence; that in light of the decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), Hobbs Act conspiracy is not a § 924(c) predicate crime of violence; and that his conviction on Count Three must thus be vacated as unconstitutional.   Reviewing defendant's challenge to his Count Three conviction under the plain-error standard applicable to unpreserved claims of error, we conclude that, in the circumstances of this case, the errors did not affect defendant's substantial rights, and we decline to disturb the judgment.

Affirmed.

KIMBERLY J. RAVENER, Assistant United States Attorney, New York, New York (Geoffrey S. Berman, United States Attorney for the Southern District of New York, Sagar Ravi, Karl Metzner, Assistant United States Attorneys, New York, New York, on the brief), *for Appellee*.

DEVIN McLAUGHLIN, Middlebury, Vermont (Langrock Sperry & Wool, Middlebury, Vermont, on the brief), *for Defendant-Appellant*.

KEARSE, *Circuit Judge*:

Defendant Neil Dussard appeals from a March 15, 2018 judgment entered in the United States District Court for the Southern District of New York after his plea of guilty before George B. Daniels, *Judge*, convicting him of "[c]onspiracy to commit Hobbs Act robbery" in violation of 18 U.S.C. § 1951 (Count One) and "[p]ossession of firearm in furtherance of narcotics conspiracy" in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three), Judgment at 1, and sentencing him principally to 24 months' imprisonment on the conspiracy count, to be followed by 60 months' imprisonment on the firearm count. On appeal, Dussard, who did

not raise any claims of error in the district court, contends that on Count Three, in accordance with his plea agreement, he in fact pleaded guilty to possession of a firearm in furtherance of a crime of violence; that in light of the decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), a Hobbs Act conspiracy is not a crime of violence within the meaning of § 924(c)(1)(A)(i); and that his conviction on Count Three must therefore be vacated as unconstitutional. Reviewing Dussard's challenge to his Count Three conviction under the plain-error standard, we conclude that, in the circumstances of this case, the errors did not affect Dussard's substantial rights, and we affirm.

## I. BACKGROUND

Dussard and four coconspirators were arrested in New York City on September 8, 2016, while attempting to commit an armed robbery of an individual they believed to be a narcotics dealer transporting 12 kilograms of cocaine. To the

extent pertinent to this appeal, Dussard was indicted on three counts.  Count One

alleged that

> [f]rom at least in or about August 2016 up to and including on or about September 8, 2016, . . . NEIL DUSSARD . . . [and the other named] defendants[] unlawfully and knowingly did . . . conspire . . . and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), . . . to wit, . . . to commit the armed robbery of an individual believed to be a narcotics dealer . . . .
>
> (Title 18, United States Code, Section 1951.)

(Indictment ¶ 1.)   Count Two alleged that in the same period,

> NEIL DUSSARD . . . and others known and unknown, intentionally and knowingly did . . . conspire . . . together and with each other to violate the narcotics laws of the United States.
>
> 3.   It was a part and an object of the conspiracy that . . . NEIL DUSSARD . . . and others known and unknown, would . . . distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).
>
> 4.   The controlled substance that . . . NEIL DUSSARD . . . conspired to distribute and possess with the intent to distribute was *five kilograms and more of mixtures and substances containing a detectable amount of cocaine,* in violation of Title 21, United States Code, Section 841(b)(1)(A).
>
> (Title 21, United States Code, Section 846.)

- 5 -

(Indictment ¶¶ 2-4 (emphasis added).) Count Three alleged that on or about September 8, 2016, along with his codefendants,

> NEIL DUSSARD . . . *during and in relation to a crime of violence* for which they may be prosecuted in a court of the United States, namely, *the robbery conspiracy charged in Count One of this Indictment*, **and** *during and in relation to a drug trafficking crime* for which they may be prosecuted in a court of the United States, *namely, the narcotics conspiracy charged in Count Two of this Indictment*, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and *did aid and abet the use, carrying, and possession of a firearm, to wit, three pistols.*
>
> (Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

(Indictment ¶ 5 (emphases added).)


1. *The Plea Agreement*

On May 16, 2017, Dussard entered into a plea agreement with the government ("Plea Agreement" or "Agreement") pursuant to which he would plead guilty to "Counts One and Three," which were described as follows:

> Count One charges the defendant with *conspiracy to commit Hobbs Act robbery* from at least in or about August 2016, up to and including on or about September 8, 2016, in violation of 18 U.S.C. § 1951. . . .

Count Three charges the defendant with using and carrying a firearm during and in relation to a crime of violence, to wit, *the Hobbs Act robbery* charged in Count One of the Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). *Count Three carries* a maximum term of imprisonment of life; [and] *a mandatory minimum term of imprisonment of five years, which must run consecutive to any other sentence imposed . . . .*

(Plea Agreement at 1 (emphases added).)

In the Agreement, the government agreed that "[i]n consideration of the defendant's plea to the above offense," it would not prosecute Dussard further on Counts One and Three as described in the Agreement (*id*. at 1-2), and that "at the time of sentencing, the Government will move to dismiss any open Counts against the defendant" (*id*. at 2). The Agreement also stated, *inter alia*, that

*should the conviction* following the defendant's plea of guilty pursuant to this Agreement *be vacated for any reason*, then *any prosecution* that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement *(including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant*, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.

(Plea Agreement at 6 (emphases added).)

2. *The Plea Hearing*

Dussard's plea hearing was held on July 25, 2017. The district court confirmed that Dussard had understood and signed the Plea Agreement (*see*, *e.g.*, Plea Hearing Transcript, July 25, 2017 ("Plea Tr."), at 11) and that he "wish[ed] to plead guilty to Count One and Count Three of th[e] indictment" (*id*. at 4). The court described Count One of the Indictment as "charg[ing Dussard] with *conspiracy* to commit what we refer to as a Hobbs Act robbery," and described Count Three as "charg[ing Dussard] with using and carrying a firearm during and in relation to a crime of violence, to wit, *that Hobbs Act robbery*." (*Id*. at 7 (emphases added).)

The court asked Dussard what he had done that made him guilty of those two offenses. Dussard responded as follows:

> On approximately August 2016 to September 8, 2016, I conspired with individuals who possessed firearms in order to steal narcotics at gun point from people we believed were drug dealers transporting narcotics. At the time I committed the offense I knew what I was doing was wrong.

(*Id*. at 13.) Determining that Dussard was pleading guilty knowingly and voluntarily, the court accepted Dussard's plea of guilty "because you've acknowledged that you are guilty *as charged in Count One and Count Three of this*

- 8 -

*indictment,*" and "because your plea . . . is supported by facts containing each of the essential elements of those offenses."  (*Id*. at 14 (emphasis added).)

### 3.  *The Sentencing Hearing*

The presentence report ("PSR") prepared for Dussard's sentencing described his involvement in the conspiracy.  It noted that the coconspirators' plan was to rob an individual they believed was a drug dealer.  Dussard was to, and did, supply two cars; he was in one of them when the arrests were made as the coconspirators approached their target.  In preparatory conversations in which Dussard participated--which the government had recorded by a confidential source ("CS")--the coconspirators discussed their understanding that the targeted drug dealer would be carrying some 12 kilograms of cocaine.  One of the coconspirators said he had lined up buyers for the cocaine.

At the sentencing hearing, neither Dussard nor his trial attorney objected to the factual findings of the PSR.  The court adopted those findings.

The court accepted the calculation in the Plea Agreement and the PSR that under the advisory Sentencing Guidelines the recommended range of

imprisonment for Count One was 41-51 months, and that the mandatory minimum term of imprisonment for Count Three was 60 months. The government asked the court to impose a sentence for Count One within the Guidelines range.

Dussard urged the court to impose no prison time for Count One and sentence him to 60 months, the minimum permissible for Count Three. His attorney stated that Dussard

> is extremely remorseful for his participation in this crime. He instructed me last year to reach out to the government and inform them of his intent to accept responsibility for his conduct and spare the government any additional resources in the prosecution of his case.

(Sentencing Transcript, March 15, 2018, at 9.) The attorney argued that Dussard was in Guidelines criminal history category I, and that he had suffered momentary weakness, yielding to temptation when the CS held out the prospect of getting "15 to 20 kilos of cocaine," which, in the attorney's experience, would fetch $30,000-$40,000 per kilogram (*id*. at 11).

After hearing a brief statement from Dussard, who stated principally that he "accept[ed] full responsibility" for his role, and for the "really bad decision" he had made because he was "in a vulnerable state" (*id*. at 13), the district court

sentenced Dussard to a term of 24 months' imprisonment on Count One, to be followed by the mandatory minimum consecutive sentence of 60 months' imprisonment on Count Three. On motion of the government, the court then dismissed the remaining counts of the Indictment.

4. *The Judgment*

Judgment was entered on March 15, 2018. It correctly stated that Dussard was guilty of Hobbs Act conspiracy on Count One. But it erroneously stated that Dussard's conviction on Count Three was for "[p]ossession of firearm in furtherance of narcotics conspiracy." Judgment at 1. There was no motion to correct the judgment.

5. *The Course of the Present Appeal*

Dussard timely appealed. However, his appellate attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) ("*Anders* Brief"), moving to withdraw as counsel and stating that there were no nonfrivolous issues for appeal except one that "[i]t would not be in Mr. Dussard's best interest to pursue" (*Anders*

Brief dated August 21, 2018, at 14). Counsel stated that "Mr. Dussard does have a non-frivolous basis to challenge his plea to the Count Three gun charge, because the predicate crime he plead to of conspiracy to commit Hobbs Act Robbery is not a 'crime of violence' for purposes of 18 U.S.C. § 924(c)(3)"--alluding to the reasoning of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (finding "crime of violence" definition in 18 U.S.C. § 16(b) unconstitutionally vague). (*Anders* Brief at 14-15.)

However, counsel stated that if Dussard succeeded in withdrawing his plea of guilty to Count Three, he "would run an unacceptable risk of adverse consequences," because "[a] successful challenge has no reasonable prospect of getting Mr. Dussard a better sentence, and carries a significant risk of re-exposing Mr. Dussard to a mandatory minimum 15 years of imprisonment," more than twice the 84-month sentence he received. (*Id*. at 15.) Counsel pointed out that the government's agreement to dismiss Count Two gave Dussard a "substantial benefit" because it eliminated his exposure to a mandatory minimum sentence of 10 years' imprisonment under 21 U.S.C. § 841(b)(1)(A)--a term to which the Count Three mandatory five-year term would have been consecutive. (*Anders* Brief at 19-20.)

In June 2019, while the appeal and the *Anders* motion were pending, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), ruling that the residual definition of crime of violence in § 924(c)(3)(B) is unconstitutionally vague, *see* 139 S. Ct. at 2336. Counsel thereafter successfully moved to withdraw his *Anders* motion.

Following this Court's decision in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019) ("*Barrett*"), which held that *Davis* "precludes" a conclusion "that [a] Hobbs Act robbery conspiracy crime qualifies as a § 924(c) crime of violence," *id*. at 127, Dussard filed his opening brief on appeal, arguing that his conviction on Count Three is unconstitutional under *Davis* and must be vacated.

Two months later, Dussard followed with a supplemental brief, seeking a preliminary decision by this Court as to whether--if his Count Three conviction were to be vacated--the government would be permitted to reindict him on the charges that were dismissed pursuant to the Plea Agreement. He argued that any remand should be limited to his resentencing on the undisturbed Count One, and that the government should not be permitted to pursue the dismissed

charges, for they would subject Dussard to a much more severe penalty than he had received:

> Mr. Dussard received a total sentence of 84 months. If the government is permitted to seek reindictment if Mr. Dussard is "successful" in challenging the constitutionality of his Count Three conviction, then Mr. Dussard would be "rewarded" by facing a mandatory minimum sentence of 180 months if reindicted on Counts Two and Three.

(Dussard supplemental brief on appeal at 1.) Dussard stated that if we determined that the government could so reindict him, he would like to be allowed to withdraw his appeal. (*See id*. at 2.)

In a summary order dated May 20, 2020, we declined to grant Dussard's request for an advisory opinion as to the government's power to reindict Dussard on Counts Two and Three. We allowed him a three-week period in which to decide whether he wished to withdraw the present appeal. *See United States v. Dussard*, 805 F. App'x 69 (2d Cir. 2020). Dussard thereafter informed the Court that he wishes to proceed with this appeal.

## II.  DISCUSSION

In pursuit of his appeal, Dussard acknowledges that he made no challenge to his Count Three conviction in the district court; he contends that he is entitled to relief on plain-error review.  We cannot conclude that he meets the criteria for such relief.

A party may preserve a claim of error for review on appeal "by informing the court--when the court ruling or order is made or sought--of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."  Fed. R. Crim. P. 51(b).  Such an objection may be lodged for the purpose of preserving it for appellate review even where it appears to be foreclosed by existing precedent.  An error that has not been preserved by timely objection may be reviewed on appeal if it is "[a] plain error that affects substantial rights."  Fed. R. Crim. P. 52(b).

The requirements for obtaining relief on plain-error review are well established.  Under Rule 52(b),

> "before an appellate court can correct an error not raised [in the district court], there must be (1) 'error,' (2) that is 'plain,' and (3)

that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"

*United States v. Groysman*, 766 F.3d 147, 155 (2d Cir. 2014) ("*Groysman*") (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (which was quoting *United States v. Olano*, 507 U.S. 725, 732 (1993))). The burden is on the appellant to meet this standard. *See, e.g., United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004); *Groysman*, 766 F.3d at 155.

The first two parts of the plain-error analysis are easily satisfied here. The government concedes, as it must in light of *Davis* and *Barrett*, that Dussard's conviction on Count Three on the basis of firearm possession during and in relation to a Hobbs Act conspiracy is error. *Davis* "precludes" a conclusion "that [a] Hobbs Act robbery conspiracy crime qualifies as a § 924(c) crime of violence." *Barrett*, 937 F.3d at 127. The fact that *Davis* had not been decided at the time Dussard entered his plea is of no consequence; an error is "plain" within the meaning of Rule 52(b) if the error is established at the time of the appeal. *See, e.g., Henderson v. United States*, 568 U.S. 266, 279 (2013) ("'it is enough that an error be "plain" at the time of appellate consideration' for '[t]he second part of the [four-part] *Olano* test [to be] satisfied.'"

(quoting *Johnson*, 520 U.S. at 468)); *United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019).

We cannot conclude, however, that the error affected Dussard's substantial rights. An error affects the defendant's substantial rights when it is prejudicial--that is, when there is a "reasonable probability" that the error affected the outcome of the proceeding. *Dominguez Benitez*, 542 U.S. at 81-82 (internal quotation marks omitted). In a case such as this, in which the outcome was a conviction based on a plea of guilty, the appellant must show that there is a reasonable probability that, but for the error, he would not have pleaded guilty. *See, e.g., id.* at 76.

In assessing this plain-error factor, we review the record as a whole. *See, e.g., United States v. Vonn*, 535 U.S. 55, 59 (2002) (a defendant who failed to object to a Rule 11 error in acceptance of his plea of guilty "has the burden to satisfy the plain-error rule and . . . a reviewing court may consult the whole record when considering the effect of any error on substantial rights"); *United States v. Garcia*, 587 F.3d 509, 520 (2d Cir. 2009) ("in assessing whether the error affects substantial rights, the record as a whole becomes relevant").

Dussard has not met his burden of showing that his plea of guilty on Count Three adversely affected his substantial rights, given the record as a whole. We consider, *inter alia*, the following aspects of the record:

■ Dussard's factual statement under oath at his plea hearing (*see* Plea Tr. 13 ("I conspired with individuals who possessed firearms in order to steal narcotics at gun point from people we believed were drug dealers transporting narcotics"));

■ the PSR's factual descriptions of the coconspirators' plan to steal 12 kilograms of cocaine from the targeted drug dealer, having lined up buyers to whom to sell it;

■ the fact that neither in advance of the sentencing hearing nor when expressly asked at that hearing whether he had any objections to the PSR did Dussard or his attorney object to any of the PSR's descriptions of the events;

■ the fact that Count Two of the Indictment alleged that the charged drug trafficking conspiracy involved more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, which exposed Dussard to a mandatory minimum prison term of 10 years, *see id*. § 841(b)(1)(A), on that count alone;

■ Dussard's expression, in his own words and through his attorney, of his contrition and his desire to spare the government and himself from further proceedings (*see* Part I.3. above);

■ the fact that Count Three of the Indictment alleged firearm possession both "during and in relation to a crime of violence . . . , namely, the robbery conspiracy charged in Count One of this Indictment, *and during and in relation to a drug trafficking crime . . . ,*

*namely, the narcotics conspiracy charged in Count Two of this Indictment* (Indictment ¶ 5 (emphases added)); and

■ the demonstrated willingness of both the government and Dussard to have all charges against him resolved by means of a plea agreement pursuant to which he would plead guilty to a § 924(c)(1)(A)(i) offense, with its consecutive mandatory minimum five-year prison term, plus one offense that had no mandatory minimum prison term.

These aspects of the record indicate, *inter alia*, that Dussard would have had little genuine hope of being acquitted of the Count Two drug trafficking conspiracy after a trial. The coconspirator meetings planning the robbery of drug dealers believed to be transporting narcotics were attended by one or more confidential sources; some telephone conversations were recorded; some meetings were surveilled by law enforcement; and pistols were seized when the coconspirators were arrested as they advanced on the site of the planned robbery. If convicted on all counts, Dussard would have been sentenced to a minimum of 15 years' imprisonment. The Plea Agreement as drafted avoided that exposure; and it could also have achieved the same result validly by making a simple reference to the Count Two narcotics conspiracy as a predicate drug trafficking crime in lieu of

the reference to the Count One Hobbs Act robbery conspiracy as a predicate crime of violence.

The five-year mandatory minimum sentence provided in § 924(c)(1)(A)(i) applies to firearm possession "during and in relation to" either a "crime of violence *or [a] drug trafficking crime*" (emphasis added). Count Three of the Indictment alleged both of these predicates. Further, the applicability of § 924(c)(1)(A)(i) "*does not require the defendant to be convicted of (or even charged with) the predicate crime*, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson v. United States*, 779 F.3d 125, 129-30 (2d Cir. 2015) (emphasis added). The above description of the evidence as to the events provided an ample predicate for a conviction under § 924(c)(1)(A)(i) on the basis of firearm possession during and in relation to a drug trafficking crime. It included Dussard's sworn admission that he knowingly participated in a conspiracy "to steal narcotics at gun point from people we believed were drug dealers transporting narcotics" (Plea Tr. 13); and Dussard did not contest the PSR descriptions of meetings he attended with other coconspirators at which (a) it was discussed that the targeted drug dealers would be transporting 12 kilograms of cocaine--a quantity inconsistent

with any notion that the coconspirators intended to steal the drugs for their own personal use--and (b) a coconspirator stated that he already had buyers lined up for the cocaine they would steal.

Thus, if Dussard and the government had anticipated the *Davis* decision making the predication of Count Three on the Hobbs Act conspiracy invalid, they could have avoided the invalidity in Dussard's Count Three plea of guilty just by changing the two lines of the Agreement's Count Three description that referred to a crime of violence and Hobbs Act conspiracy, to have that description refer instead to the allegation of firearm possession "during and in relation to a drug trafficking crime . . . , namely, the narcotics conspiracy charged in Count Two of this Indictment" (Indictment ¶ 5).

While Dussard argues that he did not plead guilty to Count Three on the basis of its allegation that the firearm possession was related to a drug trafficking crime, nothing about his plea or the plea hearing itself provides any basis for an argument that he was willing to plead guilty to Count Three only if it was tied to the charge of Hobbs Act conspiracy and that he would not have pleaded guilty to Count Three if the Plea Agreement had referred instead to the drug

trafficking predicate. Indeed, as it was, the language used in the Plea Agreement--and in the plea hearing with respect to Count Three and Dussard's plea--was hardly fastidious. The Agreement itself, while referring to Count One as charging Hobbs Act "conspiracy," stated that "Count Three charges the defendant with using and carrying a firearm during and in relation to a crime of violence, to wit, the Hobbs Act *robbery* charged in Count One" (Plea Agreement at 1 (emphasis added)). The omission of reference to conspiracy when describing Count Three was perpetuated in the plea hearing when the court described Count Three of the Indictment as "charg[ing] you with using and carrying a firearm during and in relation to a crime of violence, to wit, *that Hobbs Act robbery*" (Plea Tr. 7 (emphasis added)). And after listening to Dussard state that he had "conspired with individuals who possessed firearms in order to steal narcotics at gun point from people we believed were drug dealers transporting narcotics" (*id*. at 13), the court accepted his plea without referring to the Plea Agreement's limited focus on the crime of violence segment of Count Three, stating simply that "you've acknowledged that you are guilty *as charged in* Count One and Count Three of this indictment" (*id*. at 14 (emphasis added)). There was no objection or request to

- 22 -

specify that Dussard's acknowledgement was limited to the crime-of-violence allegation in Count Three.

Plainly, Dussard was motivated--and the government was willing--to enter into a plea agreement that would allow him to plead guilty to a § 924(c)(1)(A)(i) offense, with its mandatory minimum consecutive five-year prison term, plus an offense that had no mandatory minimum prison term. Had he and the government anticipated the decision in *Davis*, this could easily have been accomplished--with no difference in the offense of conviction or in the punishment--by simply having the two lines of the Agreement describing Dussard's Count Three agreed-upon plea refer not to a crime of violence but refer instead to the drug trafficking crime that was also alleged as a § 924(c)(1)(A)(i) predicate in Count Three.

Dussard has pointed to nothing in the record to indicate that he would not have agreed to that language. Indeed, it would have resulted in precisely the same judgment on Count Three that was in fact entered, mistakenly, which he has made no effort to correct.

CONCLUSION

For the reasons stated above, we conclude that Dussard has not shown that the error in his conviction on Count Three, made plain by the decisions in *Davis* and *Barrett* invalidating the stated crime-of-violence predicate for that offense, affected his substantial rights. Given his demonstrated willingness to plead guilty to Count Three in order to gain dismissal of Count Two and avoid its mandatory minimum 10-year term of imprisonment, he has not shown any reasonable probability that he would not have pleaded guilty to Count Three in order to secure that beneficial result based on the permissible drug-trafficking-crime predicate alleged in Count Three.

The judgment is affirmed.