**19-1054-cr**
*United States v. Heyward*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term 2020

(Argued: December 11, 2020 ǀ Decided: June 28, 2021)

Docket No. 19-1054-cr

UNITED STATES OF AMERICA,

*Appellee,*

v.

COREY HEYWARD,

*Defendant-Appellant.*†

———————

Before:

POOLER, WESLEY, CARNEY, *Circuit Judges.*


In November 2016, a jury convicted Corey Heyward of (1) conspiring to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count One); (2) conspiring to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846 (Count Two); and (3) possessing or aiding and abetting the possession of firearms in furtherance of *either* the racketeering conspiracy or the narcotics conspiracy charged in the prior two counts, in violation of 18 U.S.C. § 924(c) (Count Three). As reflected on the verdict sheet, the jury specially found that the pattern of racketeering activity charged in Count One encompassed both narcotics and murder conspiracy conduct. It also found that a firearm relevant to Count

———————

† The Clerk of the Court is directed to amend the official caption as set forth above.

Three was discharged in furtherance of the Count One racketeering conspiracy but was not discharged in furtherance of the separate Count Two narcotics conspiracy.

Following the law of the Circuit at the time, the district court (Engelmayer, *J.*) sentenced Heyward to 120 months' imprisonment for Count Three, to be served consecutive to his concurrent 120-month sentences for Counts One and Two. However, our recent decisions in the wake of *United States v. Davis*, 139 S. Ct. 2319 (2019), preclude 18 U.S.C. § 924(c) from being applied to a murder conspiracy. Given the possibility that Heyward's § 924(c) conviction was based on murder conspiracy conduct rather than on a qualifying drug-trafficking offense, we hold that his conviction on Count Three is invalid. We therefore **VACATE** Heyward's 18 U.S.C. § 924(c) conviction and **REMAND** for further proceedings consistent with this opinion.

————————

JOHN S. WALLENSTEIN, Law Office of John S. Wallenstein, Garden City, NY, *for Defendant-Appellant*.

MAX NICHOLAS, Assistant United States Attorney (Diane Gujarati, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY.

————————

WESLEY, *Circuit Judge*:

In November 2016, a jury convicted Corey Heyward of (1) conspiring to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count One); (2) conspiring to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846 (Count Two); and (3) possessing or aiding and abetting the possession of firearms in furtherance of *either* the racketeering conspiracy or the narcotics

conspiracy charged in the prior two counts, in violation of 18 U.S.C. § 924(c) (Count Three). As reflected on the verdict sheet, the jury specially found that the pattern of racketeering activity charged in Count One encompassed both narcotics and murder conspiracy conduct. It also found that a firearm relevant to Count Three was discharged in furtherance of the Count One racketeering conspiracy—subjecting Heyward to a sentencing enhancement of at least five additional years' imprisonment—but was not discharged in furtherance of the separate Count Two narcotics conspiracy.

At the time of Heyward's sentencing, the law of this Circuit was that 18 U.S.C. § 924(c) applied to both drug conspiracies and murder conspiracies, so the district court (Engelmayer, *J.*) had no reason to direct the jury to specify whether the firearms charge was premised on Count One's murder-and-drugs racketeering conspiracy or on Count Two's drug-trafficking conspiracy. The district court therefore sentenced Heyward to 120 months' imprisonment for the Count Three firearms conviction (60 months for the base conviction and 60 months for the

3

discharge enhancement) without identifying the conspiracy to which Count Three attached.[1]

Since then, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), and our decisions in light of *Davis* preclude 18 U.S.C. § 924(c) from being applied to a murder conspiracy. Heyward rightly notes this change in the law and argues that his conviction under 18 U.S.C. § 924(c) in Count Three is invalid given the possibility that it was based on non-qualifying murder conspiracy conduct rather than on a qualifying drug-trafficking offense. He also argues that there was insufficient evidence adduced at trial for the jury to have convicted him on the racketeering conspiracy and narcotics conspiracy charges.

Considering the record, the jury's special findings, the district court's jury instructions, and the Government's concession that the firearm discharge enhancement under 18 U.S.C. § 924(c)(1)(A)(iii) cannot be supported by Heyward's racketeering conviction, we hold that Heyward's § 924(c) conviction cannot stand. Because our analysis rests on factors specific to this litigation, we

---

[1] Curiously, despite not requiring specificity for the base § 924(c) offense, the district court *did* require the jury to identify the qualifying offense to which the firearm *enhancement* attached.

4

need not now decide whether, in light of *United States v. Davis*, a single racketeering conspiracy encompassing both qualifying and non-qualifying offenses under § 924(c) is itself automatically a qualifying offense. Finally, we reject Heyward's contention that there was insufficient evidence to support his convictions on the racketeering conspiracy and narcotics conspiracy charges.

For these reasons, we vacate Heyward's conviction under 18 U.S.C. § 924(c) in Count Three and remand the case to the district court for resentencing consistent with this opinion.

## BACKGROUND[2]

In September 2016, a grand jury returned a superseding indictment against Corey Heyward and twenty other alleged co-conspirators for their participation in the "18 Park" street gang operating in the Bronx. The members of 18 Park were alleged to have engaged in "acts involving murder, robbery, and narcotics trafficking" between 2006 and 2016 as part of their affiliation with the gang. J.A. 226, 228. Eighteen defendants eventually entered pleas and, in October 2016, only Heyward, Raheem Amarizan, and Miguel Romero went to trial on the same three

---

[2] Citations to J.A. refer to the Joint Appendix; citations to S.A. refer to the Special Appendix.

charges: racketeering conspiracy (Count One); narcotics conspiracy (Count Two); and possessing or using, or aiding and abetting the possession or use of, firearms in furtherance of *either* the racketeering conspiracy or the narcotics conspiracy (Count Three).

Viewed "in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Government established that Heyward trimmed down rocks of crack cocaine to a size suitable for retail; provided the trimmed-down crack to several members of 18 Park for the purpose of distribution; sold drugs alongside other 18 Park members, sometimes putting up his own money to obtain the drugs for later sale; and performed several of these tasks within the stash house that 18 Park used to store guns, ammunition, and drugs. Moreover, when law enforcement raided the 18 Park stash house in December 2013, Heyward alerted the other occupants and attempted to prevent the officers from entering.

The Government further established that Heyward was involved—both directly and indirectly—in several gang-related shootings. On one occasion, for example, Heyward accidentally shot 18 Park member Diquinn Lacend while confronting a rival gang. As consolation for the friendly-fire incident, Heyward gave Lacend two guns for protection, one of which Lacend later used to fire at a

6

rival gang member. On another occasion, Heyward went to a party specifically to accompany an 18 Park leader on a successful mission to shoot and kill a member of the "Bloods" gang. And finally, the Government proved that on September 15, 2012, Heyward possessed and fired a gun, then discarded it and ran as the police approached.

The jury convicted Heyward on all three counts in a special verdict sheet, as reproduced in part below:

**COUNT ONE: Racketeering Conspiracy**

COREY HEYWARD
     Guilty ✓          Not Guilty

a. If you have found the defendant guilty of Count One, then please indicate whether the pattern of racketeering activity that the defendant agreed would be committed involved murder:

COREY HEYWARD
     Proven ✓          Not Proven

b. If you have found the defendant guilty of Count One, then please indicate whether the pattern of racketeering activity that the defendant agreed would be committed involved a conspiracy to distribute and possess with intent to distribute narcotics:

COREY HEYWARD
     Proven ✓          Not Proven

**COUNT TWO: Narcotics Conspiracy**

> COREY HEYWARD
> > Guilty ✓          Not Guilty

[Only consider Count Three as to a particular defendant if you have first determined that the defendant is guilty of either the Racketeering Conspiracy charged in Count One or the Narcotics Conspiracy charged in Count Two or both.]

**COUNT THREE: Possession or Use of Firearms, or Aiding or Abetting the Possession or Use of a Firearm, During or in Furtherance of Either the Racketeering Conspiracy Charged in Count One or the Narcotics Conspiracy Charged in Count Three**[3]

> COREY HEYWARD
> > Guilty ✓          Not Guilty

If you found the defendant guilty of the offense charged in Count Three, please indicate whether you also found him responsible for discharging, or aiding and abetting the discharge of, a firearm, as set forth in subparagraphs (a)-(b).

> a. A firearm possessed or used during or in furtherance of the **racketeering conspiracy** was **discharged**.
>
> > COREY HEYWARD
> > > Proven ✓          Not Proven

---

[3] Although the verdict sheet refers to "the Narcotics Conspiracy Charged in Count Three," J.A. 2930 (emphasis added), we assume this last word is error. The narcotics conspiracy was actually charged in Count Two.

b. A firearm possessed or used during or in furtherance of the **narcotics conspiracy** was **discharged**. [4]

COREY HEYWARD
Proven          Not Proven ✓

J.A. 2925-31 (omitting language as to co-defendants).

Prior to sentencing, the district court denied Heyward's alternative motions for acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Federal Rule of Criminal Procedure 33. As to the Rule 29 motion, it concluded that the evidence supporting Heyward's convictions was "not only sufficient but abundant." S.A. 6. On April 11, 2019, the district court sentenced Heyward to concurrent 120-month terms of imprisonment for the racketeering conspiracy and narcotics conspiracy convictions, and to a consecutive 120-month term of

---

[4] The phrasing of Count Three, subsection (b), might lead the reader to believe that the jury found that Heyward possessed or used a firearm in furtherance of the narcotics conspiracy. That is incorrect. The verdict sheet provides that, if the jury finds Heyward "guilty" in "Count Three" of firearm possession during *either* the racketeering conspiracy *or* the narcotics conspiracy, then it must answer the two special questions in subsections (a) and (b) on whether the firearm was "discharged" in these respective contexts. Thus, the jury's negative response to subsection (b) could mean that it believed no firearm was possessed at all and therefore was not discharged, or that a firearm was possessed but was not discharged. The verdict sheet does not require the jury to specify.

imprisonment for the firearms conviction—60 months for the base conviction and 60 months for the discharge enhancement.  S.A. 16-17.[5]

## DISCUSSION

Heyward raises two challenges to his convictions.  First, and principally, he argues that the Supreme Court's recent decision in *United States v Davis*, 139 S. Ct. 2319 (2019), precludes his firearms conviction under 18 U.S.C. § 924(c).  Second, he argues that considering the inherent biases of the cooperating witnesses, no fair assessment of the evidence adduced at trial could have supported a conviction on the racketeering conspiracy and drug-trafficking conspiracy charges.  We review Heyward's unpreserved § 924(c) challenge for plain error, Fed. R. Crim. P. 52(b), and his sufficiency of the evidence challenge *de novo*, *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015).  Regarding the former standard, we recently clarified that "regardless of whether an unpreserved error becomes apparent only on appeal in light of new case law, it is the defendant who retains 'the burden of establishing entitlement to relief for plain error.'"  *United States v. Eldridge*, No. 18-3294-cr, 2021

---

[5] Counts Ten and Thirteen in the operative indictment, which originally contained charges against all 21 co-defendants, were renumbered as Count Two and Count Three, respectively, at Heyward's trial to prevent jury confusion.  **[Gov't Br. 14-15.]**

WL 2546175, at *7 (2d Cir. June 22, 2021) (quoting *Greer v. United States*, No. 19-8709, 2021 WL 2405146, at *4 (U.S. June 14, 2021)).

## I.     Count Three Conviction – 18 U.S.C. § 924(c)

The firearms statute under which Heyward was convicted provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i). An additional, mandatory five-year penalty is to be assessed if that firearm was *discharged* in furtherance of either a crime of violence or a drug-trafficking crime. *Id.* § 924(c)(1)(A)(iii) ("discharge enhancement"). At the time of Heyward's trial, a "crime of violence" was defined as a felony that either

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another,
>
> or
>
> (b) by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3).

11

Shortly after the district court imposed Heyward's sentence, the Supreme Court invalidated the latter definition—also known as the "residual clause"—as unconstitutionally vague. *See Davis*, 139 S. Ct. at 2323–24. This predictably effected a fundamental change in our § 924(c) jurisprudence. As it pertains to the present case, prior to *Davis* "it ha[d] long been the law in this circuit that conspiracy to commit a crime of violence is itself a crime of violence." *United States v. Barrett*, 903 F.3d 166, 175 (2d Cir. 2018) ("*Barrett I*"). The reason being that if the object of the conspiracy is a crime that requires physical force, then the conspiracy itself naturally presents a substantial risk of such force being used. *See id.* After *Davis* invalidated the residual clause, however, we were compelled to revisit our decision in *Barrett I* and ultimately held that a conspiracy to commit a violent felony—in that case, violent robbery culminating in murder—could not alone support a conviction under the remaining "elements clause" of § 924(c)(3). *See United States v. Barrett*, 937 F.3d 126, 129 (2d Cir. 2019) ("*Barrett II*") (vacating in part *Barrett I*).

As the law now stands, "[a]ny valid application of § 924(c) . . . must proceed from an underlying conviction qualifying under the elements clause." *United States v. Culbert*, 453 F. Supp. 3d 595, 597 (E.D.N.Y. 2020). That is, "the minimum

12

criminal conduct necessary for [a qualifying] conviction under" § 924(c) must include actual, attempted, or threatened physical force against a person or his property. *United States v. Hill*, 890 F.3d 51, 55–56 (2d Cir. 2018). Alternatively, a § 924(c) conviction may be premised on a drug-trafficking crime, including conspiracies. *See United States v. Dussard*, 967 F.3d 149, 157–58 (2d Cir. 2020). If it is not clear from the face of the relevant statute "whether a defendant *necessarily* was charged with or convicted of" a qualifying violent felony or drug-trafficking offense, *United States v. Martinez*, 991 F.3d 347, 354 (2d Cir. 2021), we look to "a limited class of documents from the record of conviction to determine what crime, with what elements, a defendant was convicted of," *Gray v. United States*, 980 F.3d 264, 266 (2d Cir. 2020) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

Applying the foregoing analysis and taking into account the specific circumstances of this litigation, we cannot conclude that Heyward's § 924(c) conviction necessarily rested upon either a qualifying drug-trafficking offense or categorical crime of violence. Heyward's conviction on Count Three was thus plain error, albeit perhaps unforeseeable to the parties and the district court at the time of sentencing. *See Dussard*, 967 F.3d at 156 ("[A]n error is 'plain' within the meaning of Rule 52(b) if the error is established at the time of the appeal.").

13

As an initial matter, the jury was asked to determine in Count Three only whether Heyward possessed or used, or aided or abetted the possession or use of, a firearm during or in furtherance of "*[e]ither* the Racketeering Conspiracy Charged in Count One *or* the Narcotics Conspiracy Charged in Count [Two]." J.A. 2930 (emphases added). The jury answered in the affirmative and the district court sentenced Heyward on that basis. At the time of trial, specifying which conspiracy supported the § 924(c) conviction was unnecessary because our prior cases clearly would have permitted the conviction under either circumstance; but *Davis* and *Barrett II* preclude that conclusion if the Count Three conviction was premised exclusively on the murder conspiracy conduct charged in Count One, as it would have then relied on the residual clause's definition for "crime of violence." Given the disjunctive nature of the verdict sheet's Count Three prompt, the conviction can be valid only if *both* Count One (racketeering conspiracy) and Count Two (narcotics conspiracy) remain qualifying predicates—a drug-trafficking offense or a categorical crime of violence—for the firearms offense.

Looking first at Count Two, the narcotics conspiracy unquestionably satisfies § 924(c). Specifically, the jury found that Heyward violated 21 U.S.C. §§ 841(a)(1) and 846 by conspiring with other members of 18 Park to "distribute

14

and possess with intent to distribute" at least 280 grams of crack cocaine and one kilogram of heroin. J.A. 248. This is a qualifying drug-trafficking offense under § 924(c). *See* 18 U.S.C. § 924(c)(2) ("For purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . .").

That leaves Count One's racketeering conspiracy. "Because racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, we look to the predicate offenses to determine whether" the racketeering conviction can support § 924(c) liability. *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009). The predicates upon which Count One was based are murder conspiracy conduct and drug-trafficking conspiracy conduct, both of which the jury specially found to be part of the enterprise's pattern of racketeering activity. As discussed above, conspiracy to murder is *not* a qualifying offense under § 924(c),[6] *see Barrett II*, 937 F.3d at 129, while conspiracy to distribute narcotics *is* a

---

[6] This includes racketeering conspiracies with murder activity predicates, as present in this case. *See Martinez*, 991 F.3d at 354 ("We can assume that the [RICO] conspiracy violation is *not* a crime of violence under the force clause because, as the Supreme Court's decision in *Davis* reasoned, a conspiracy offense cannot categorically involve the use of force, since its key element is simply an *agreement* to commit a crime.").

qualifying offense under § 924(c), *see* 18 U.S.C. § 924(c)(2); 21 U.S.C. §§ 841(a)(1), 846.

Despite the jury not specifying which of these RICO predicates undergirded the § 924(c) conviction, the Government contends that, in either case, the Count One racketeering conviction should validate the Count Three § 924(c) conviction. Its conclusion is based on the proposition that, "for Heyward, furthering the racketeering conspiracy was inextricably intertwined with furthering the narcotics conspiracy" because, according to the Government, narcotics trafficking was "the core of the 18 Park enterprise." Gov't Br. at 20–21. Thus, the syllogism goes, even if a gun were possessed *directly* in furtherance of the murder conspiracy conduct, it was necessarily *also* possessed to further the drug-trafficking conspiracy conduct, and by extension the narcotics conspiracy charged in Count Two. As the Government explains, Counts One and Two both address the same narcotics conspiracy activity. *See, e.g.*, *id.* at 2 ("The narcotics conspiracy charged in Count [Two] was also alleged as an object of the racketeering conspiracy charged in Count One.").

The basis for this argument appears to be rooted in one of our summary orders affirming a § 924(c) conviction where the two underlying charged

16

offenses—Hobbs Act robbery conspiracy and narcotics trafficking conspiracy—were "inextricably intertwined," but only the latter was a valid § 924(c) predicate. *United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016). In *Vasquez*, the defendant's co-conspirator "fatally discharged a firearm in furtherance of an agreement to rob drug dealers and to distribute any recovered narcotics and narcotics proceeds." *Id.* We concluded that, because the "robbery scheme was presented as a part of the proved narcotics scheme" and because the defendant "points to nothing in the record showing that" the two schemes were separable, the firearms conviction rested on a valid § 924(c) drug-trafficking predicate. *Id.*

Sound though the *Vasquez* principle may be in general, we reject its application in this case for at least three reasons. First, although 18 Park and its rivals were all involved in the unlawful distribution of narcotics, the record reveals a distinct factual separation between the gang violence among them and 18 Park's charged narcotics activity. When Heyward accidentally shot his compatriot Lacend, it was in the context of an altercation spurred on by a territorial gang rivalry, an incident that a jury could reasonably conclude was unrelated to the procurement or distribution of drugs. The two handguns Heyward subsequently provided to Lacend were then used toward similar gang rivalry activity. Likewise,

17

Heyward's presence at the party where an 18 Park leader shot and killed a Bloods member was isolated from the drug trade; rather, the altercation was in direct response to a death threat issued by the Bloods member to an 18 Park member. And the Government provides no context for the September 15, 2012 incident, in which Heyward is believed to have fired two gunshots in an otherwise empty street. Because the bulk of the firearms evidence was tied to gang violence that a jury reasonably could find was separate from any narcotics activity, we cannot agree that the murder and drug conspiracies were "inextricably intertwined." *See id.*[7]

---

[7] The Government argues that some evidence suggests that firearms were possessed directly in furtherance of the narcotics conspiracy—for example, guns were stored alongside drugs in an 18 Park stash house and were hidden in the street where 18 Park sold drugs. But as discussed *infra*, our inquiry is directed to whether we can *confirm* that the jury based the firearm conviction on a valid drug-trafficking predicate. *See United States v. Foley*, 73 F.3d 484, 493 (2d Cir. 1996) ("When . . . the jury has been presented with several bases for conviction, one of which is invalid as a matter of law, and it is impossible to tell which ground the jury selected, the conviction must be vacated."). It is "impossible to tell" here whether the verdict has a proper basis because the jury could have reasonably concluded that firearms furthered only the murder conspiracy activity and not the narcotics trafficking.

In any case, with respect to evidence of guns hidden in the street and at the stash house, numerous witnesses testified that the purpose of the guns was for 18 Park members "[t]o feel protected" while outside amid the pervasive gang rivalry activity. J.A. 669; *see* J.A. 701; J.A. 1985.

Second, the jury specially found that a firearm connected with Heyward's convictions was discharged in furtherance of the racketeering conspiracy *but not* in furtherance of the narcotics conspiracy.[8] Based upon these findings, and in light of *Davis*, the Government concedes that the additional discharge enhancement under § 924(c)(1)(A)(iii) should be vacated. It nonetheless argues that "[t]he jury's tying of the discharge of a firearm to the racketeering conspiracy [but not to the narcotics conspiracy] . . . does not affect the validity of Heyward's" primary § 924(c) conviction for firearm possession. Gov't Br. at 24. We disagree. Although it is true, as we presume the Government is suggesting, that a defect in a firearms discharge enhancement does not in and of itself undermine the underlying firearms conviction, under certain circumstances it could reveal such a fatal flaw. In this case, for example, the jury's findings demonstrate that an action taken in furtherance of the enterprise's non-drug-trafficking activity does not necessarily further its drug-trafficking activity. We must glean from this observation that the two categories of conduct are not, in fact, inextricably intertwined, as the

---

[8] As noted in footnote 4, *supra*, the finding that a firearm was not discharged in furtherance of the drug-trafficking conspiracy does not imply the existence of a predicate finding that a firearm was first possessed in furtherance of the drug-trafficking conspiracy.

19

Government claims. If they were, then the jury could not have concluded that a firearm was discharged in one but not the other context.

Moreover, if the racketeering and narcotics conspiracies *were* inextricably intertwined, then the Government would not have conceded that the same jury findings "require[] the vacatur of . . . the sentencing enhancement [for the firearm discharge]" after *Davis*. *Id.* For if, indeed, the two conspiracies were so palpably connected to each other, then the discharge enhancement should logically apply to the narcotics conspiracy *through* the murder conspiracy activity. The Government's concession is therefore incompatible with the *Vasquez* argument it makes on appeal.

And third, the district court's jury instructions evidence that the charged murder conspiracy conduct was not inextricably intertwined with the drug conspiracy conduct. In charging the jury with the law that it was to apply in reaching a verdict on the § 924(c) charge, the district court described the racketeering count as a "crime of violence" three separate times, and not as a drug-trafficking crime, even though that count encompassed both types of activity. Specifically, in introducing the § 924(c) charge, the district court told the jury that "Count Three charges each defendant with using or carrying firearms during and

20

in relation to a crime of violence, *in this case, the racketeering conspiracy charged in Count One*, and in relation to a drug trafficking crime, in this case[,] the narcotics conspiracy charged in Count Two." J.A. 2851 (emphasis added). The court then went on to instruct the jury on the first element of the crime: that "the defendant you are considering committed or aided and abetted the commission of either a crime of violence, *namely the racketeering conspiracy charged in Count One*, or a drug trafficking crime, namely the narcotics conspiracy in Count Two." *Id.* at 2852 (emphasis added). A short time later, the court again stated that "[i]f you found the defendant you are considering committed the crime of violence, *that crime charged in Count One*, then this element is satisfied and you may go on to consider whether that defendant is guilty of Count Three." *Id.* (emphasis added).

Based on these instructions, it is likely that the jury understood the racketeering conspiracy to be a crime of violence and not a drug-trafficking crime. If, therefore, the jury convicted Heyward on Count Three for possessing or using a firearm "during and in relation to" the racketeering conspiracy charged in Count One and not "in relation to" the narcotics conspiracy charged in Count Two, *id.* at 2851, we may assume that its purpose would have been to convict Heyward of carrying a firearm solely in connection with the (now-invalid) crime of violence.

21

But as the verdict sheet only asked the jury to determine whether Heyward possessed or used a firearm during *either* of these conspiracies, we are left with a distinct uncertainty as to the propriety of his conviction.[9] *See United States v. Foley*, 73 F.3d 484, 493 (2d Cir. 1996) ("When . . . the jury has been presented with several bases for conviction, one of which is invalid as a matter of law, and it is impossible to tell which ground the jury selected, the conviction must be vacated." (citing *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled in part on other grounds*)). Nor, given the record and arguments before us, do we independently conclude that Heyward possessed a firearm during or in relation to a qualifying crime of violence or drug-trafficking offense. *See Johnson v. United States*, 779 F.3d 125, 129 (2d Cir. 2015) ("[Section] 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed."); *see also United States v. Jones*, 935 F.3d 266, 274 (5th Cir. 2019) (vacating convictions under nearly identical circumstances because there was "a reasonable probability that the jury would not

---

[9] These ambiguities in the jury instructions and verdict sheet exist largely because of *Davis* and its progeny, not through lack of diligence by the parties or district court.

have convicted [defendants] of the § 924 offenses if the invalid crime of violence predicate were not included on the verdict form").

In sum, because the circumstances described above refute the Government's *Vasquez* argument and show that Heyward's § 924(c) conviction may very well have been premised on an unconstitutionally vague provision of that statute, we conclude that it would constitute plain error affecting Heyward's substantial rights to permit that conviction to stand. *See Dussard*, 967 F.3d at 155; *Foley*, 73 F.3d at 493; *see also Eldridge*, 2021 WL 2546175, at *8 (holding that an unpreserved *Yates* error does not affect a defendant's substantial rights where, unlike here, it was overwhelmingly likely that any reasonable juror would have convicted him under a properly charged § 924(c) theory). The fairness of any criminal judicial proceeding insists upon the foundational rule that all "[e]lements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt." *United States v. O'Brien*, 560 U.S. 218, 224 (2010). In light of *Davis* and *Barrett II*, only a vacatur of Heyward's § 924(c) conviction will vindicate that principle.

Although not raised by the Government, it bears mentioning that we do not need to and are not now considering the more fraught question of whether a single racketeering conspiracy encompassing both qualifying and non-qualifying

23

conduct under § 924(c) is itself automatically a qualifying offense. If that were true, for example, a racketeering conviction based on a dozen prostitution and gambling predicate acts and just one drug-trafficking predicate act might, for the purposes of the firearms penalty statute, be considered a § 924(c) drug-trafficking offense.

We addressed a version of this question in *United States v. Ivezaj* and concluded that "where the government proves (1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as 'crimes of violence' under § 924(c), a [RICO] conviction serves as a predicate for a conviction under § 924(c)." 568 F.3d at 96 (alteration omitted). In that case, we determined that a racketeering scheme that consisted mostly of "loansharking and violent acts of extortion" constituted a "crime of violence." *Id*. However, the logic of that holding appears to have been firmly grounded in our belief at the time that conduct posing a "substantial risk that physical force . . . would be used" was a crime of violence. *Id*. (quoting the residual clause of 18 U.S.C. § 924(c)(3)(B)). That no longer being the case, it is unclear the extent to which *Ivezaj* retains any of its force. *See Martinez*, 991 F.3d at 356 ("The Supreme Court precedents discussed above have certainly called into question, if not the premises directly underlying *Ivezaj*, many of the

24

principles and precedents that formed the legal background against which the case was decided."). In any event, *Ivezaj* was concerned with a "crime of violence," a type of offense that is arguably better suited to impute its character or nature to other crimes in an enterprise than is drug trafficking, the crime at issue in this analysis. Moreover, there has never been a catch-all residual clause corollary for drug-trafficking crimes, possibly precluding an *Ivezaj*-type holding in the drug-trafficking context.

For the purposes of this appeal, it is enough that the record, verdict sheet, and jury instructions together admit of the significant possibility that Heyward's firearms conviction was based on the now-invalidated residual clause definition of crime of violence.

## II.   Sufficiency of the Evidence

As described above, the district court characterized the quantum of proof against Heyward as "not only sufficient but abundant." S.A. 6. Nevertheless, Heyward contends that the evidence adduced at trial was insufficient for the jury to have found, beyond a reasonable doubt, that he was guilty of participating in either the racketeering conspiracy (Count One) or the narcotics conspiracy (Count Two). Specifically, he argues without citation that because the "primary evidence

25

against [him] consisted of the testimony of four Government cooperators," their "obvious self-interest" should compel us to weigh their statements with "extraordinary scrutiny." Heyward Br. at 27–28. This concern, although relevant for the jury to consider, is beyond the province of our review. Indeed, "it is well-settled that when reviewing the sufficiency of the evidence we defer to the jury's assessment of witness credibility." *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) (quoting *United States v. Bala*, 236 F.3d 87, 93–94 (2d Cir. 2000)). We therefore decline to upset Heyward's convictions for Counts One and Two on that basis.

## CONCLUSION

We **VACATE** Heyward's conviction under 18 U.S.C. § 924(c) and **REMAND** the case to the district court for resentencing consistent with this opinion.

26